PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/29/99
THOMAS K. KAHN
CLERK

No. 98-6337

D. C. Docket No. 97-CR-176-001

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS SAMUEL GARRETT,
a.k.a. Fire-Man,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Alabama

**(September 29, 1999)**

Before TJOFLAT and DUBINA, Circuit Judges, and THRASH*, District Judge.

DUBINA, Circuit Judge:

---

*Honorable Thomas W. Thrash, U.S. District Judge for the Northern District of Georgia sitting by designation.

This is a child pornography case. A federal grand jury in the Southern District of Alabama charged defendant Thomas Samuel Garrett ("Garrett") in a three count indictment. Count One of the indictment charged sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(2); Count Two charged transporting child pornography, in violation of 18 U.S.C. § 2252(a)(1); and Count Three charged enticement of a minor, in violation of 18 U.S.C. § 2422(b). Garrett pled guilty to Counts One and Two of the indictment and the government dismissed Count Three pursuant to a plea agreement. The district court sentenced Garrett to 60 months imprisonment. He then perfected this appeal.

## I. BACKGROUND

Officers of the Hillsborough County, Florida, Sheriff's Department conducted an investigation of child pornography displayed on the Internet. As part of the investigation, deputies would log on to sex chat rooms and identify themselves as underage children. In this case, the investigator contacted Garrett by identifying himself as "Katrina," a 15 year old girl.

Garrett and "Katrina" maintained contact over the Internet for a two-month period of time. During these contacts, Garrett talked about sexual acts that he and "Katrina" could perform.

Garrett had numerous pornographic photographs on his computer that

involved minors as young as eight years old engaging in vaginal and anal intercourse, and one minor female inserting a glass soda bottle into her vagina. Garrett illustrated his intentions of wanting to have sex with "Katrina" by transmitting these pornographic photos from Alabama to "Katrina" in Florida, and asking her if she would perform the depicted acts if he would travel to meet her.

Garrett was scheduled for job related training in Florida and discussed meeting "Katrina" in a hotel room to have sex. He provided his office telephone number to "Katrina." A female detective called Garrett and identified herself as "Katrina." After his training session was canceled in Florida, Garrett and "Katrina" discussed the possibility of Garrett taking a vacation to meet her. Subsequently, based on this information, the FBI obtained a search warrant for Garrett's residence and his office and arrested him.

At the sentencing hearing, the government presented the testimony of Dr. John N. Shriner, a physician who works primarily with the Child Advocacy Center in Mobile, Alabama. In the course of his career, Dr. Shriner has examined approximately 1200 children that have been sexually abused. He has also been admitted as an expert witness in child sexual and physical abuse cases in state and federal courts over 50 times. Dr. Shriner testified, among other things, that he examined the photographs which were recovered from Garrett's computer.

Importantly, he testified that, in his opinion, the acts depicted in the photographs would have caused the children involved physical pain.

## II.  ISSUES

1.  Whether the district court erred in finding that Garrett distributed child pornography in an effort to seduce a minor and that this finding warranted an upward adjustment pursuant to U.S.S.G. § 2G2.2(b)(2).

2.  Whether the district court erred in finding that child pornography which depicted acts which would necessarily have been painful to the young children involved constituted sadistic material which warranted an upward adjustment pursuant to U.S.S.G. § 2G2.2(b)(3).

## III.  STANDARD OF REVIEW

This court reviews the district court's factual findings for clear error, and application of the sentencing guidelines *de novo*.  *See United States v. Miller*, 166 F.3d 1153, 1155 (11th Cir. 1999)(per curiam).

## IV.  ANALYSIS

A.  Distribution Enhancement

Garrett first argues that the district court erred in imposing a distribution enhancement because the enhancement requires distribution for a pecuniary gain which he did not receive.  The government argues that Garrett distributed the

4

photographs to receive sex, which is a "valuable gain" sufficient for the enhancement. The guideline section provides for an increase in the base offense level if the offense involved distribution of pornography. See U.S.S.G. § 2G2.2(b)(2). Specifically, the guideline states that "[i]f the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than five levels." *Id.* Application Note 1 to this section states that "['d]istribution' includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." U.S.S.G. § 2G2.2, commentary, n.1.

The type of gain needed for a distribution enhancement is an issue of first impression in this circuit. Three circuits have held that the enhancement is not limited to instances involving distribution for pecuniary gain. *See United States v. Lorge*, 166 F.3d 516, 518-19 (2nd Cir.), *cert. denied*, 119 S.Ct. 1372 (1999); *United States v. Hibbler*, 159 F.3d 233, 237-38 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 1278 (1999); *United States v. Canada*, 110 F.3d 260, 263 (5th Cir.)(per curiam), *cert. denied*, 118 S.Ct. 195 (1997). At least one circuit has held that the enhancement is limited to transactions for pecuniary gain, but includes swaps, barter, in-kind transactions, and other valuable consideration. *See United States v.*

*Black*, 116 F.3d 198, 202-03 (7th Cir.), *cert. denied*, 118 S.Ct. 341 (1997).

We agree with the approach taken by the Fifth Circuit in *Canada*, a case with very similar facts to the present case. In *Canada*, the defendant transmitted child pornography for the purpose of enticing a 13 year old child to have sex with him. 110 F.3d at 263. The Fifth Circuit upheld the five-level enhancement for distribution and held that the identification of distribution as used in § 2G2.2(b)(2) is not limited to transactions for pecuniary gain. *See id*. The court was persuaded that while Application Note 1 included distribution with pecuniary gain, it was not intended to be an exhaustive list of what constitutes distribution. *See id*. We hold that Garrett's distribution of materials depicting sexual acts of minors and adults is sufficient to trigger the enhancement characteristic of U.S.S.G. § 2G2.2(b)(2). Garrett distributed these photographs to "Katrina" for the purpose of enticing her to engage in deviant sexual acts with him. The record does not dispute this fact. As the *Canada* court stated:

> [w]hile § 2G2.2(b)(2) calls upon the sentencing court to impose enhancement based on the retail value of the material distributed, in cases such as this where the material was distributed for a purpose which is difficult to evaluate monetarily, the sentencing court is within its province to impose the threshold five-level enhancement.

6

110 F.3d at 263.

Therefore, although Garrett did not distribute these photographs for commercial gain, he did distribute them in order to receive what he considered to be another "valuable gain." Accordingly, the enhancement was warranted.

Garrett also argues that the district court erred in its factual finding that he transmitted photographs in order to seduce the child to have sex with him. This argument is belied by the record. Garrett first contacted "Katrina" in a sex chat room. During the two month investigation, Garrett contacted "Katrina" 25 different times. During these contacts, he transmitted five photographs to "Katrina." One photograph depicted a child between 10 and 15 years of age engaging in sexual intercourse with an adult male. Garrett accompanied these photographs with suggestions that he and "Katrina" engage in similar conduct. Garrett told "Katrina" that he had been scheduled for travel to Florida. They discussed getting a hotel room in order to have sex. Garrett later advised "Katrina" that his business trip had been canceled so he would take vacation days to meet her. Garrett also provided "Katrina" his office telephone number. A female police officer called Garrett and identified herself as "Katrina." Despite Garrett's claim at the time of his arrest that he thought the chances were "slim to none" that he would have actually traveled to Florida to meet "Katrina," Garrett did go so far as to make

7

preliminary inquiry on a motel room. Based on these facts, we conclude that the district court did not clearly err in finding that Garrett transmitted the photographs in an effort to seduce "Katrina." This finding is not changed by the fact that Garrett was arrested before he could actually travel to Florida. Accordingly, we affirm the upward adjustment pursuant to U.S.S.G. § 2G2.2(b)(2).

B. Sadistic or Masochistic Conduct

Garrett asserts the enhancement for sadistic or masochistic conduct is not warranted, as this court has never defined those terms, and the photographs do not fall within the traditional understanding of those terms as they relate to bondage or acts of violence. The government argues that the district court correctly determined that the photographs involved conduct that would have been painful to the minor children involved. This conduct, the court reasoned, is excessively cruel and therefore, sadistic.

The sentencing guidelines provide for a four-level enhancement if the material depicts minors and sadistic and masochistic or violent acts. *See* U.S.S.G. § 2G2.2(b)(3). Neither the guidelines nor this circuit has ever defined these terms. In fact, no circuit has addressed whether photographs depicting minors in a situation that would have caused them pain could be considered sadistic such that an enhancement is warranted pursuant to U.S.S.G. § 2G2.2(b)(3).

8

As previously noted, at the sentencing hearing, the government called Dr. Shriner, who testified that young girls have extremely sensitive genitalia and that as a medical doctor he must use extreme care in their examinations. Moreover, he testified that he had examined the photographs that were downloaded from Garrett's computer. He testified that they involved children between eight and 11 years of age being penetrated vaginally and anally by adult males. One photograph depicted an 11 year old girl with a glass soda bottle in her vagina. Dr. Shriner testified that, based on his expert opinion, the acts portrayed in these photographs would necessarily have been painful to the young children involved.

In *United States v. Delmarle*, 99 F.3d 80 (2nd Cir. 1996), the Second Circuit reviewed application of this enhancement and noted that the term "sadism" is not defined by the sentencing guidelines. *Id.* at 83. The court reviewed a photograph of an eight or nine year old boy and found that the anal penetration depicted was likely to cause the child pain. *See id.* The court concluded that, "whatever might be inferred as to the purpose of the act depicted or the reaction of the actor, it was within the court's discretion to conclude that the subjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic within the means of § 2G2.2(b)(3)." *Id.*

Based on Dr. Shriner's testimony at the sentencing hearing in the present

case, we agree with the district court's finding that an upward adjustment was warranted pursuant to U.S.S.G. § 2G2.2(b)(3). Moreover, we conclude that Garrett's reliance on *United States v. Tucker*, 136 F.3d 763 (11th Cir. 1998)(per curiam), is misplaced. In *Tucker*, we held that intent is a requirement of a § 2G2.2(b)(3) enhancement. *Id.* at 964. The court found that the evidence was sufficient that Tucker intended to possess material depicting minors involved in sadistic conduct based on his Internet conversations in which he stated that he was into "young action" and would "like to start trading." *Id.* The court did not require evidence that Tucker wanted photographs of children who had been tortured, beaten or tied up. *See id.* Likewise, Garrett never argued that he did not intend to receive child pornography. He did not dispute that he intended to receive photographs that depicted very young children who were vaginally and anally penetrated by adult men, as well as a photograph of a young girl who was vaginally penetrated by a glass bottle. In our opinion, this is sufficient to satisfy the intent requirement of § 2G2.2(b)(3).

In conclusion, because we see no reversible error in this record, we affirm Garrett's sentences in all respects.

**AFFIRMED.**

10