[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 20, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-16626

_____

D. C. Docket No. 01-00082-CR-T-30-MA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

versus

FREDERICK STANLEY HALL, JR.,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(November 20, 2002)**

Before HULL, WILSON and FAY, Circuit Judges.

HULL, Circuit Judge:

Defendant Frederick Stanley Hall, Jr. appeals his convictions for distribution

and receipt of child pornography by computer through interstate or foreign

commerce, in violation of 18 U.S.C. § 2252A(a)(2) (2000).  Hall also appeals the district court's order forfeiting his computer.  The government cross-appeals the district court's denial of the sentencing enhancement under U.S.S.G. § 2G2.2(b)(3) (2001) for the trafficking of materials that portray sadistic or masochistic conduct. After review and oral argument, we affirm Hall's convictions on all counts, but we vacate his sentence and remand this case to the district court for resentencing.

## I.  BACKGROUND

**A.      Seized Computer in Texas**

In 2000, law enforcement officials from the police department in Corpus Christi, Texas seized a computer from a resident of Corpus Christi suspected of distributing child pornography over the internet.  The suspected individual had an account with America Online, Inc. (hereinafter "AOL") and had the following electronic mail address (or "screen name"): "youngdad37."  A computer forensic specialist, employed by the police department, extracted child pornographic images from the hard drive of that individual's computer.

Some of the child pornographic images extracted from the seized computer—government exhibits 4A through 4K—had been exchanged between "youngdad37" and another AOL user, with the screen name "hello im beth." These images depict: (1) an adult male vaginally penetrating a young girl (4A; 4B);

2

(2) minors performing oral sex on adult males (4C; 4D; 4I; 4J); (3) a minor masturbating an adult male (4E); (4) a minor lewdly and lasciviously exposing her genitalia (4F); and (5) minors engaged in sexual activities with adult males (4G; 4H; 4K).

## B.    Seized Computer in Florida

Further investigation revealed that the screen name "hello im beth" was registered to Phyllis Hotaling, an AOL customer residing in Brandon, Florida. The police department in Corpus Christi contacted Detective Phillipe Dubord of the sheriff's office in Hillsborough County, Florida and informed him that an individual in Brandon was involved in trading child pornography. Dubord ascertained that the defendant Hall, Hotaling's son, resided with his mother in Brandon. Dubord also learned that Hotaling's account contained other screen names, including the screen name "nytewalker666," which the government later used at trial to link Hall to the child pornographic images. The sheriff's office then obtained a warrant to search Hotaling's home.

On February 5, 2001, Detective Dubord and other law enforcement officials executed the search warrant at Hotaling's residence in Brandon, Florida. They removed some diskettes and two computers, including one located in Hall's

3

bedroom. They also interviewed the occupants of Hotaling's home and ascertained that Hall was the person likely responsible for trading child pornography.

Detective Dubord and another law enforcement official informed Hall of his Miranda[1] rights, which Hall waived after signing an FBI form advising him of his rights. They interviewed Hall in his bedroom, and he admitted that he had been using AOL for approximately a year. Hall also acknowledged that he used AOL screen names "hello im beth" and "nytewalker666," among other screen names.

During the interview, Detective Dubord showed Hall child pornographic images and asked Hall if he had seen them before. Hall admitted that he had sent or received some of the child pornographic images. Hall initialed the ones that he recalled having sent or received. These images, with Hall's initials on them, were later marked as government exhibits 4A through 4K and introduced into evidence during Hall's trial.

**C.      Indictment**

On May 7, 2001, a grand jury indicted Hall for violating 18 U.S.C. § 2252A(a)(2) (2000) as follows: (1) distribution and receipt of child pornography through interstate commerce by a computer on January 3, 2000 (Count One); (2) receipt of child pornography through interstate commerce by a computer on

---

[1]See Miranda v. Arizona, 384 U.S. 436 (1966).

4

January 6, 2000 (Count Two); and (3) distribution of child pornography through interstate commerce by a computer on January 8, 2000 (Count Three). The indictment also contained a forfeiture count, which charged that Hall shall forfeit his interest in, inter alia, his computer for his engagement in the violations alleged in Counts One through Three.

## D.     Pre-Trial

Prior to trial, the government provided written notice of its intent to introduce a videotaped interview pursuant to Rules 404(b) and 807 of the Federal Rules of Evidence. The interview was of a four-year old girl who was the victim in a pending State of Florida case against Hall for lewd and lascivious molestation and sexual battery on a victim less than 12 years of age. According to the district court, the girl states in the videotape that Hall "licked [her] pee-pee" and demonstrates physically how she touched Hall.

Hall moved to exclude this evidence from use during his trial. Hall argued that the evidence would only inflame, confuse, and mislead the jury and maintained that the probative value of the evidence was substantially outweighed by its prejudice. In response, the government argued that the evidence was probative of Hall's interest in children and, consequently, probative of his intent in receiving and distributing child pornography. The government also maintained

5

that it should be permitted to introduce the evidence in its case-in-chief because Hall had pled not guilty and placed his intent directly at issue. The government contended that any undue prejudice could be dispelled by a limiting instruction to the jury.

After conducting a hearing and viewing the videotape, the district court entered a pre-trial order determining that the evidence was relevant and admissible, under Rules 404(b) and 807, to prove Hall's intent, knowledge, and lack of mistake or accident "in the event [that Hall] asserts lack of intent as a defense." In such a situation, the district court concluded that "the probative value of the videotape exceeds its prejudicial effect and does not violate Fed. R. Evid. 403." The district court also provided Hall an opportunity to cross-examine the child before trial.

**E. Trial**

On the day of trial and before the jury was impaneled, the parties informed the district court that they had come to an understanding concerning the admission of the videotaped interview of the child. They advised the court that the government would not seek to introduce the evidence in its case-in-chief but that it would do so in its rebuttal case if Hall raised a defense such as intent or mistake. Hall informed the court that he intended to rest following the government's case-in-chief and to hold the government to its burden of proof.

Trial commenced on August 20, 2001 and lasted for a day-and-a-half. Events at trial proceeded as the parties had discussed. After the government presented its case-in-chief, Hall rested without presenting a defense. The videotaped interview of the child never was introduced into evidence. On August 21, the jury found Hall guilty on all three counts.

**F.     Sentence**

On November 15, 2001, the district court sentenced Hall to 97 months imprisonment on each count, such terms to run concurrently, and three years supervised release. The district court compiled Hall's criminal history score, which placed him in category III, and calculated Hall's total offense level as 26. Hall's base offense level was 17 for his convictions under 18 U.S.C. § 2252A(a)(2) (2000). See U.S.S.G. § 2G2.2 (2001). The district court increased Hall's base offense level of 17 to an adjusted offense level of 26, by adding: (a) two levels under U.S.S.G. § 2G2.2(b)(1) because the trafficked material (specifically, government exhibits 4I and 4K) involved a minor under the age of 12; (b) five levels under U.S.S.G. § 2G2.2(b)(2)(B) because Hall's offenses involved distribution for the receipt, or expectation of receipt, of a thing of value; and (c) two levels under U.S.S.G. § 2G2.2(b)(5) because Hall used a computer to transmit the material.

The government also requested that the district court increase Hall's offense level by four levels, under U.S.S.G. § 2G2.2(b)(3), for trafficking in materials that portrayed sadistic or masochistic conduct or other depictions of violence. The district court denied this request.[2]

Before the jury's verdict, Hall stipulated to the forfeiture of his computer in the event that the jury returned a guilty verdict. However, the district court did not include the forfeiture in its initial written sentence, dated November 15, 2001. On December 5, 2001, the district court amended that sentence and entered a preliminary order of forfeiture regarding Hall's computer. The district court entered a final order of forfeiture on April 29, 2002. Both parties timely appealed.

## II. RULE 404(b) EVIDENCE

On appeal, Hall argues that the district court's pre-trial decision about the government's Rule 404(b) evidence was erroneous[3] and forced him to surrender

---

[2]Hall does not appeal any of these increases in his offense level by the district court. Instead, the government cross-appeals the district court's denial of the additional four-level increase under U.S.S.G. § 2G2.2(b)(3).

[3]Specifically, Hall argues that the district court's ruling was improper because: (1) the evidence of the alleged capital sexual battery was merely propensity evidence; (2) the extrinsic offense did not require the same mens rea as the charged offenses; (3) the evidence of capital sexual battery was not probative of the intent necessary to commit the offense of receiving or distributing child

8

several constitutional rights.[4]  The government responds that Hall is not entitled to relief because the Rule 404(b) evidence—the videotaped interview of the child—never was introduced during the jury trial.  Because the evidence never was introduced, the government submits that the district court, in denying Hall's pre-trial motion to exclude the videotape, rendered an unreviewable advisory ruling. The government argues that if Hall believed the district court's ruling was in error, he should have asserted lack of intent as a defense at trial, objected to the resulting admission of the videotape, and then challenged its admission based on a complete record.

For the reasons discussed below, we conclude that the district court's pre-trial decision about the videotape evidence under Rule 404(b) is not reviewable in this appeal.

## A.  Luce v. United States

We begin our analysis of this issue with Luce v. United States, 469 U.S. 38 (1984), because it involved a similar situation.  In Luce, the Supreme Court

---

pornography; and (4) the probative value of the extrinsic evidence was substantially outweighed by the undue prejudice.

[4]Hall argues that the district court's evidentiary ruling forced him to surrender his rights to due process, to confront witnesses, to testify on his own behalf, to present witnesses, and to effective assistance of counsel.

concluded that a district court's <u>in limine</u> evidentiary ruling, permitting prior conviction evidence under Rule 609(a)(1) of the Federal Rules of Evidence, was not reviewable because the defendant never testified and thus the government's prior conviction evidence was never introduced at trial.[5] <u>Luce</u>, 469 U.S. at 42-43.

In <u>Luce</u>, the district court entered an <u>in limine</u> ruling during trial that a prior conviction of the defendant could be used to impeach him if the defendant testified at trial. <u>Id.</u> at 39-40. As a result, the defendant chose not to testify at trial. <u>Id.</u> at 40. The Supreme Court in <u>Luce</u> expressly considered whether a defendant may obtain appellate review of a district court's <u>in limine</u> evidentiary ruling concerning the admissibility of the defendant's prior conviction when the defendant chose not to testify as a result of the district court's ruling. <u>Id.</u> at 39. The Supreme Court recognized that "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." <u>Id.</u> at 41. It further observed that

---

[5]When <u>Luce</u> was decided, Rule 609(a)(1) provided in pertinent part: General Rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant . . . .
Fed. R. Evid. 609(a)(1).

10

"[a]ny possible harm flowing from a district court's <u>in limine</u> ruling permitting impeachment by a prior conviction is wholly speculative," <u>id.</u>, and recognized that a trial court's "ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." <u>Id.</u> The Supreme Court also noted that "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous <u>in limine</u> ruling." <u>Id.</u> at 41-42.

In <u>Luce</u>, the Supreme Court further recognized that the defendant's failure to testify created difficulties for the reviewing court because of the question of harmless error. <u>Id.</u> at 42. The Supreme Court reasoned that "[w]ere <u>in limine</u> rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." <u>Id.</u> In view of these reasons, the Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." <u>Id.</u> at 43.

Subsequently, courts have not limited <u>Luce</u> to only evidentiary rulings under Rule 609(a). For instance, this Court in <u>United States v. Dimatteo</u>, 759 F.2d 831 (11th Cir. 1985), extended <u>Luce</u> to apply to <u>in limine</u> rulings under Rule 608(b) of

11

the Federal Rules of Evidence.[6]  Adopting the Supreme Court's rationale in Luce, we held that "a defendant's decision not to present a witness[,] whose credibility would have formed the basis of an evidentiary objection under Rule 608(b)[,] forecloses our ability to review the claim that the district court might have erroneously allowed extrinsic evidence to impeach that witness in violation of Rule 608(b)."  Id. at 833; see also United States v. Studnicka, 777 F.2d 652, 660 (11th Cir. 1985) (holding that defendant's tactical decision not to take the stand precludes defendant from challenging on appeal the trial court's ruling that allowed the prosecutor to question defendant about certain matters).

## B.  Other Circuits

In addition, while this Court heretofore specifically has not addressed Luce in a Rule 404(b) context, other circuits have held that Luce applies to in limine evidentiary decisions under Rule 404(b).[7]  See United States v. Ortiz, 857 F.2d

---

[6]Rule 608(b) provides in pertinent part that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence."  Fed. R. Evid. 608(b).

[7]When Ortiz was decided, Rule 404(b) provided in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  This part of Rule 404(b) was worded the same at the time of Hall's trial and is worded the same today.  Id.  We point out, however, that subsequent to

12

900, 906 (2d Cir. 1988) ("The proper method to preserve a claim of error [regarding Rule 404(b) motions] is to take the position that leads to the admission of the adverse evidence, in order to bring a fully developed record to [the reviewing court]."); United States v. Johnson, 767 F.2d 1259, 1270 (8th Cir. 1985) ("Although Luce was decided under Fed. R. Evid. 609(a)(1), its logic applies with equal force to motions under Rule 404.").

For example, in Ortiz, the defendant was charged with possession of heroin with intent to distribute, and the government sought to introduce into evidence the defendant's prior conviction as a prior similar act probative of intent under Rule 404(b). 857 F.2d at 902. Because defense counsel represented to the district court that the defense was based on mistaken identity, and not lack of intent to distribute, the court ruled in limine that the conviction would not be admitted into evidence. Id. However, the district court cautioned defense counsel that it would alter its ruling if counsel placed intent in issue by arguing that the defendant's possession of heroin was consistent with personal use. Id. at 902-03. Prior to closing argument, defense counsel indicated to the district court that he would be making a

Ortiz, a notice provision was added, which requires in a criminal case "upon request by the accused, the prosecution . . . shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Id.

13

personal use argument to the jury but ultimately elected not to because of the district court's continued admonition that it would allow the prior conviction into evidence under Rule 404(b) if counsel chose to make the personal use argument. Id. at 903. On appeal, the defendant sought reversal of his conviction on the ground that the district court's in limine ruling under Rule 404(b) was improper and forced him to abandon the personal use theory. Id. at 905.

The Second Circuit in Ortiz rejected the defendant's argument and determined that Luce's rationale was applicable equally in the context of in limine rulings under Rule 404(b). Id. at 906. The Second Circuit reasoned that "[a]lthough the district court ruled that it would admit Ortiz's prior conviction if defense counsel insisted on arguing personal use, the effect of the court's decision remained inchoate, its consequences unknowable because defense counsel did not insist on making his personal use argument." Id. at 905. The Second Circuit continued that "[s]uch insistence would have led to full development of an adequate record for purposes of appellate review. Defense counsel's contrary choice deprives us of such a record." Id. The Second Circuit also determined that because the defendant failed to insist on making a personal use argument, harmless error analysis was meaningless because holding "that [defendant]'s claim was preserved 'would result in the windfall of automatic reversal' . . . on the basis of

14

the district court's <u>in limine</u> ruling." <u>Id.</u> at 906 (quoting <u>Luce</u>, 469 U.S. at 42).

Thus, the Second Circuit concluded that the defendant's "failure to challenge the

district court's adverse disposition of the <u>in limine</u> Rule 404(b) motion by insisting

on the right to make the full personal use argument constitutes a waiver of any

claim of error in that decision."[8] <u>Ortiz</u>, 857 F.2d at 906.

### C. <u>Luce</u> Applies to Rule 404(b)

We agree with <u>Ortiz</u>'s reasoning and conclude that <u>Luce</u> applies equally to <u>in</u>

<u>limine</u> rulings about Rule 404(b) evidence.  Because Hall did not "take the position

that leads to the admission of the adverse evidence," <u>Ortiz</u>, 857 F.2d at 906, the

record is too minimally developed to support any meaningful review of the district

court's pre-trial decision about Rule 404(b) evidence.  Consequently, any possible

harm flowing from the district court's ruling—permitting the admission of the

videotaped interview of the child in the event that Hall raised a lack of intent

defense—is wholly speculative.  <u>Luce</u>, 469 U.S. at 41.  In sum, we conclude that

the district court's pre-trial Rule 404(b) ruling is not reviewable because the

videotape evidence never was admitted into evidence.  In fact, Hall's tactical

---

[8]Similarly, in <u>United States v. Johnson</u>, 767 F.2d 1259 (8th Cir. 1985), the Eighth Circuit determined that <u>Luce</u>'s "logic applies with equal force to motions under Rule 404." <u>Johnson</u>, 767 F.2d at 1270.  The Eighth Circuit then declined to review the defendants' claim that the trial court's <u>in limine</u> ruling prevented them from testifying. <u>Id.</u>

decision not to testify actually obtained the trial advantage of limiting the government's evidence on the intent issue and thereby prevented the government from admitting the videotaped interview in its case-in-chief. This tactical decision, however, not only caused an inadequate record for review but also, in effect, constituted a waiver of any claim of error in that pre-trial 404(b) ruling.[9]

## III. "APPEARS TO BE"

We now turn to Hall's claim that the district court's jury instructions were erroneous in light of Ashcroft v. Free Speech Coalition, 122 S. Ct. 1389 (2002). All three counts of the indictment alleged that Hall violated 18 U.S.C. §

---

[9]Hall cites Brooks v. Tennessee, 406 U.S. 605 (1972), and New Jersey v. Portash, 440 U.S. 450 (1979), and argues that Luce does not apply when a district court's preliminary ruling concerns a question reaching constitutional dimensions. The problem for Hall is that the district court made an evidentiary ruling under Rule 404(b) and did not decide a constitutional issue. Indeed, the Supreme Court in Luce distinguished Luce from Brooks and Portash, stating that it "did not hold [in Brooks and Portash] that a federal court's preliminary ruling on a question not reaching constitutional dimensions—such as a decision under Rule 609(a)—is reviewable on appeal." Luce, 469 U.S. at 42-43.

In contrast, both Brooks and Portash involve state court rulings directly about the nature and extent of a defendant's constitutional rights under the Fifth Amendment. For example, in Brooks, the Supreme Court held unconstitutional a Tennessee statutory requirement that a defendant in a criminal case had to be his own first witness if he was to take the stand at all. Id. at 611-12. "Because the rule imposed a penalty on the right to remain silent, the Court [in Brooks] found that his constitutional rights had been infringed [by the trial court enforcing the rule] even though he had never taken the stand." Portash, 440 U.S. at 455-56 (citing Brooks, 406 U.S. at 611).

16

2252A(a)(2) (2000), which makes it a felony for any person knowingly to receive

or distribute child pornography in interstate commerce "by any means, including

by computer." At the time of Hall's indictment and trial, the definition of "child

pornography" included both images made using actual minors, 18 U.S.C. §

2256(8)(A) (2000), as well as "virtual child pornography," as added by the Child

Pornography Prevention Act of 1996.

Thus, in charging the jury, the district court defined "child pornography"

using the words of the statute:

> "[C]hild pornography" means any visual depiction, including any
> photograph, film, video, picture, or computer or computer-generated
> image or picture, whether made or produced by electronic,
> mechanical, or other means, of sexually explicit conduct, where—
>> (A) the production of such visual depiction involves the use of a
>> minor engaging in sexually explicit conduct;
>> (B) such visual depiction is, or appears to be, of a minor
>> engaging in sexually explicit conduct;
>> (C) such visual depiction has been created, adapted, or modified
>> to appear that an identifiable minor is engaging in sexually
>> explicit conduct; or
>> (D) such visual depiction is advertised, promoted, presented,
>> described, or distributed in such a manner that conveys the
>> impression that the material is or contains a visual depiction of
>> a minor engaging in sexually explicit conduct . . . .

18 U.S.C. § 2256(8) (emphasis added). Subsequent to Hall's trial, the Supreme

Court in Free Speech Coalition struck down as unconstitutional the words "or

appears to be" from the definition of child pornography contained in § 2256(8)(B)

17

and the entire definition of child pornography in § 2256(8)(D).  122 S. Ct. at 1406.

Free Speech Coalition left intact the ban on actual child pornography in the

remainder of § 2256(8).  Id. at 1396.

On appeal, Hall challenges his conviction in light of the Supreme Court's

decision in Free Speech Coalition.  Hall argues that the district court erred in its

jury charge, rendering it impossible to determine from the record whether the jury

relied on the unconstitutional definitions of child pornography in convicting him.[10]

Because Hall did not object to this jury instruction defining child

pornography, we review this issue for plain error.  See United States v. Sanchez,

269 F.3d 1250, 1280-81 (11th Cir. 2001) (en banc), cert. denied, 122 S. Ct. 1327

(2002).  Thus, Hall must show that there is (1) "error," (2) "that is 'plain,'" and (3)

"that 'affect[s] substantial rights.'" Johnson v. United States, 520 U.S. 461, 466-67

(1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).  "If all three

conditions are met, an appellate court may then exercise its discretion to notice a

forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or

public reputation of judicial proceedings.'" Sanchez, 269 F.3d at 1281 (quoting

---

[10]On all three counts, the jury returned a general verdict, "meaning that, in
theory, under the court's charge, the jury could have convicted [Hall] by finding
that the images or pictures depicted virtual children, rather than real children."
United States v. Richardson, 304 F.3d 1061, 1063 (11th Cir. 2002).

18

<u>Olano</u>, 507 U.S. at 732) (other internal quotation marks and citation omitted). "[W]here the first two prongs of the plain error rule established by <u>Olano</u> are satisfied, the defendant bears the burden of demonstrating that the plain error 'affec[ted] substantial rights.'" <u>United States v. Mitchell</u>, 146 F.3d 1338, 1343 (11th Cir. 1998) (quoting <u>Olano</u>, 507 U.S. at 734) (internal quotation marks omitted)). "In most cases, this means that the 'error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" <u>Mitchell</u>, 146 F.3d at 1343 (quoting <u>Olano</u>, 507 U.S. at 734).

The government properly concedes that this jury instruction was erroneous because it included the words "or appears to be," and that the error was plain. It submits, however, that the error did not affect Hall's substantial rights and, alternatively, that affirming Hall's convictions would not "seriously affect the fairness, integrity or public reputation of judicial proceedings." We agree that Hall has not carried his burden as to either the third or fourth prong of plain error review.

We reach this conclusion because (1) the evidence established that the children depicted in the pictures introduced at trial were actual children and (2) no one ever claimed, or even hinted, that the images were of virtual children. For example, Detective Dubord works with the Innocent Images Task Force, a federal

task force investigating child exploitation on the Internet. Dubord testified that based on his training and experience, the images depicted minors. In addition, the pictures sent out to the jury are in the record before this court and they show actual children. In fact, there was no evidence at trial of any kind indicating or inferring that the pictures contained images of virtual children as opposed to actual children.

In a recent post-Free Speech Coalition case, United States v. Richardson, 304 F.3d 1061 (11th Cir. 2002), this Court concluded that a jury instruction including "appears to be" was plain error but affirmed the defendant's conviction under the same statute because the children in the images were actual children. Id. at 1064. In Richardson, this Court stated that it had examined the images shown in the actual pictures sent out to the jury and "[t]he children depicted in those images were real. Of that we have no doubt whatsoever." Id. (internal citation omitted). Thus, we concluded that a reasonable jury could not have found that the images in issue there were of virtual children created by computer imaging technology as opposed to actual children.[11] Id. at 1064 n. 2. Likewise, after examining the

_____

[11]Hall also argues that the government's evidence was insufficient to convict him under a constitutionally valid definition of child pornography. Although Hall moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure at the close of evidence, he never challenged the government's proffer of evidence as infirm on the ground that a portion of the definition statute was unconstitutional and therefore the evidence was insufficient as to the remaining definition. In fact, Hall never contested the validity of the statute under which he

pictures sent out to the jury during Hall's trial, we conclude that the evidence showed that the children depicted in those images were real and that no reasonable jury could have found that the images were virtual children created by computer technology as opposed to actual children.

## IV. SENTENCING

### A.     Sentencing Hearing

In its cross-appeal, the government contends that the district court erred in failing to apply a four-level sentence enhancement under U.S.S.G. § 2G2.2(b)(3) (2001).[12]  At Hall's sentencing hearing, the government requested a four-level increase under § 2G2.2(b)(3) for the trafficking of materials involving the sexual exploitation of a minor where the materials "portray[] sadistic or masochistic conduct or other depictions of violence." Id.  The government sought this

---

was charged in any context.  Thus, we also review this claim for plain error.  See Fed. R. Crim. P. 52(b); Olano, 507 U.S. at 736.  However, under any standard of review, the evidence was sufficient to sustain Hall's convictions on all counts.

[12]In Sentencing Guidelines cases, "[w]e review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error." United States v. Smith, 231 F.3d 800, 806 (11th Cir. 2000) (quoting 18 U.S.C. § 3742, which provides that "[t]he court of appeals . . . shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts"), cert. denied, 532 U.S. 1019 (2001).  Smith references § 3742(d) but this language is actually in § 3742(e).

enhancement based on government exhibit 4A, which Hall sent to "youngdad37"

on January 3, 2001. Government exhibit 4A portrays an adult male vaginally

penetrating a very young girl, well under the age of twelve. The government

argued that the vaginal penetration of such a young child by an adult male would

necessarily cause pain, and thus this image portrayed sadistic[13] conduct.

The district court declined to apply the sadistic conduct enhancement in §

2G2.2(b)(3), for two reasons. First, the district court stated that "the activity

depicted is what he's [been] charged and convicted with in the first place. It's

what makes it pornographic." The district court also noted that it had already

applied a two-level increase under U.S.S.G. § 2G2.2(b)(1) for the trafficking of

materials involving the sexual exploitation of a minor where the material involves

a minor under the age of twelve years.[14] Second, the district court declined to find

that the image in exhibit 4A depicted sadism because the young child's expression

in that picture did not indicate sufficiently that she actually was experiencing pain.

**B.    Prior Precedent**

---

[13]Webster's Third New International Dictionary defines "sadism" to include "the infliction of pain upon a love object as a means of obtaining sexual release," "delight in physical or mental cruelty," and the use of "excessive cruelty."

[14]The district court based this enhancement on government exhibits 4I and 4K.

The Sentencing Guidelines do not specify what constitutes materials that portray "sadistic or masochistic conduct or other depictions of violence" prescribed in U.S.S.G. § 2G2.2(b)(3). However, several recent decisions in our circuit have construed the meaning of this language in § 2G2.2(b)(3), specifically the term "sadistic," and determined what is required for this particular enhancement to apply. In United States v. Garrett, 190 F.3d 1220 (11th Cir. 1999), this Court concluded that an image that displays the subjection of a young child to a sexual act that would have to be painful is "sadistic" within the meaning of § 2G2.2(b)(3). Garrett, 190 F.3d at 1224. Thus, we affirmed in Garrett "the district court's finding, based on the medical expert testimony, that the act of adult men's vaginal and anal penetration of children between eight and eleven years of age would be considered sadistic." United States v. Caro, No. 01-16311, slip op. 227, at 229 (11th Cir. Oct. 21, 2002) (discussing Garrett, 190 F.3d at 1224).

This Court revisited the meaning of this same language in § 2G2.2(b)(3) in United States v. Bender, 290 F.3d 1279 (11th Cir. 2002), cert. denied, __ S. Ct. __, No. 02-6870 (U.S. Nov. 18, 2002). In Bender, in affirming the district court's application of an enhancement under § 2G2.2(b)(3), we "clarified our ruling in Garrett regarding what constitutes a sadistic image." Caro, No. 01-16311, slip op. at 229-30; see Bender, 290 F.3d at 1285-86. We stated that "a photograph is

23

sadistic within the meaning of Section 2G2.2(b)(3) when it depicts the 'subjection of a young child to a sexual act that would have to be painful.'" Bender, 290 F.3d at 1286 (quoting Garrett, 190 F.3d at 1224). We then determined that photographs of "very young children being vaginally and anally penetrated by adult males" are sadistic images warranting a § 2G2.2(b)(3) enhancement. Bender, 290 F.3d at 1286; Caro, No. 01-16311, slip op. at 230.

Finally, in Caro, this Court explained what is required to show that application of an enhancement under § 2G2.2(b)(3) is appropriate. In Caro, the district court "refused to find, without expert testimony showing that the images on [defendant]'s computer involved pain to the minors portrayed, that these images constituted sadistic or masochistic material." Id. at 229. In Caro, we expressly rejected this understanding of § 2G2.2(b)(3) and determined that if the pictures depicted adult males vaginally and anally penetrating "young children," the government is not required to present expert medical testimony to prove that the images necessarily involved pain to those "young children." Id. at 230. The images in Caro showed: (a) "adult males vaginally and anally penetrating prepubescent girl"; (b) "prepubescent girls being anally and vaginally penetrated by use of foreign objects"; and (c) "prepubescent girls in leg restraints or tied in ropes being penetrated vaginally and anally by adult males." Id. at 230. Thus, in

24

<u>Caro</u>, we remanded the defendant's sentence with directions that on re-sentencing, the district court apply the four-level increase under § 2G2.2(b)(3). <u>Id.</u> at 230, 231. In <u>Caro</u>, we held that anal or vaginal penetration of a young child "would have to be painful" as follows:

> We have clearly held that such penetration would be painful to young children, and that pictures depicting young children being subjected to sexual acts that would have to be painful—without reference to any supporting expert medical testimony—are sadistic images warranting a § 2G2.2(b)(3) enhancement.

<u>Id.</u> at 230 (citing <u>Bender</u>, 290 F.3d at 1286-87).

In summary, this Circuit's recent precedent establishes that a sentencing enhancement under § 2G2.2(b)(3), for the portrayal of sadistic conduct,[15] is warranted when cases involve images displaying an adult male vaginally or anally penetrating a young child. <u>Id.</u> at 1286; <u>Caro</u>, No. 01-16311, slip op. at 230.[16] In

---

[15]The government relies solely on the "sadistic" prong of § 2G2.2(b)(3); thus, we do not address what constitutes the portrayal of "masochistic conduct or other depictions of violence" under that section.

[16]Hall asserts that this Court should decline to place any precedential value on <u>Bender</u> and <u>Garrett</u> because, in Hall's view, these decisions relied on an improper standard of review. Both decisions state that we review <u>de novo</u> "the district court's application of the sentencing guidelines to the facts." <u>Bender</u>, 290 F.3d at 1284; <u>Caro</u>, No. 01-16311, slip op. at 229. Hall contends that the proper standard of review was instead due deference to the district court's application of the Sentencing Guidelines to the facts. <u>See</u> 18 U.S.C. § 3742(e)(2000). Hall misapprehends the import of § 3742(e). In Sentencing Guidelines cases, we review <u>de novo</u> the district court's application of the law to the facts, including application

25

addition, Caro establishes that the government is not required to provide expert testimony to prove that the images necessarily involved pain to the young children depicted because "such penetration . . . would have to be painful." Id. Therefore, when an image contains such a portrayal, a sentencing court need not determine, in applying § 2G2.2(b)(3), whether the minor's expression sufficiently reveals that he or she is experiencing pain if the court determines that (1) the minor in the image is a young child and (2) the image portrays vaginal or anal penetration of a young child by an adult male. Under our precedent, the four-level enhancement pursuant to § 2G2.2(b)(3) is warranted because such penetration would necessarily be painful.

**C.  Image in Hall's Case**

---

of the guidelines to the facts. United States v. Renick, 273 F.3d 1009, 1021 (11th Cir. 2001) ("This court reviews the district court's sentencing hearing findings of fact for clear error and its application of the sentencing guidelines to those facts de novo."); Smith, 231 F.3d at 806; United States v. Tucker, 136 F.3d 763, 764 (11th Cir. 1998); see note 12 supra. Although this Court, as part of its de novo review, gives due deference to the district court's application of the guidelines to the facts, this Court is not bound by the district court's application of the guidelines to the facts and our review remains de novo. In any event, Bender and Caro are correctly decided under any standard of review. Indeed, all circuits considering this issue have concluded that medical testimony is not needed to show that anal or vaginal penetration of a young child would be painful for purposes of U.S.S.G. § 2G2.2(b)(3). See, e.g., Caro, No. 01-16311, slip op. at 230 n. 1 (listing and discussing cases from other circuits).

In light of our precedent, we conclude that the district court clearly erred in finding that the image in government exhibit 4A did not depict the infliction of pain.[17] In reviewing the image to see if the young child in the image visually indicated that she was experiencing pain, the district court failed to recognize that an adult male vaginally or anally penetrating a young child would necessarily cause pain to that child. The image in government exhibit 4A depicts actual, not illusory, vaginal penetration of a young child by an adult male. Moreover, it is plain that the victim in this image is a very young child. At sentencing, Agent Dubord testified that the girl was "definitely under 12." The image itself reveals

---

[17]In addition, the district erred in its legal conclusion that U.S.S.G. § 2G2.2(b)(3) was inapplicable because the image also provided the basis of one of Hall's convictions. Contrary to the district court's interpretation of U.S.S.G. § 2G2.2(b)(3), that an image forms the basis of a conviction under 18 U.S.C. § 2252A(a)(2) does not preclude the application of a sentencing enhancement under the Guidelines. Cf. United States v. Naves, 252 F.3d 1166, 1168 (11th Cir.) ("Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.") (quotation marks omitted), reh'g en banc denied, 273 F.3d 395 (11th Cir. 2001). Moreover, we note that U.S.S.G. § 2G2.2(b)(3) applies to a much narrower category of pictures than 18 U.S.C. § 2252A(a)(2) does. While 18 U.S.C. § 2252A(a)(2) makes it a felony for a defendant to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate commerce by any means, including computer, U.S.S.G. § 2G2.2(b)(3) provides for a sentencing enhancement only when the materials trafficked portray sadistic or masochistic conduct or other depictions of violence.

that the child is considerably younger than 12,[18] given the small size of the child overall, the small size of her hands, her total lack of pubic hair and breast tissue development, and the relative size of the child vis-à-vis the adult male in the picture.

Accordingly, after a careful review of government exhibit 4A, we have little difficulty concluding that the district court clearly erred in finding that the government had not established that exhibit 4A involved pain and was sadistic. Thus, a four-level sentencing enhancement was warranted under § 2G2.2(b)(3).

## V. FORFEITURE

Rule 35(c) of the Federal Rules of Criminal Procedure provides that "the court, acting within seven days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(c). Here, the district court sentenced Hall on November 15, 2001 but did not enter an order of forfeiture regarding Hall's computer until December 5, 2001, twenty days after the imposition of Hall's

---

[18]The government contends that the child in the picture is actually 4 years old, but we could locate no actual evidence of her precise age in the record. Thus, while the government's contention is consistent with the picture, we only say that she is considerably younger than 12.

sentence. Thus, Hall argues that this Court should order the district court to strike the order of forfeiture.

We need not address this issue because we vacate Hall's sentence on other grounds and remand this case for re-sentencing. This result pretermits our need to address this issue. On remand, the district court can consider anew whether to enter an order of forfeiture simultaneously with Hall's resentencing.

## VI. CONCLUSION

For the reasons stated herein, we affirm Hall's convictions on all counts, but we vacate Hall's sentence and remand this case to the district court for resentencing with directions that it apply the four-level increase under § 2G2.2(b)(3).

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**