BARKETT, Circuit Judge,
dissenting:
I respectfully dissent. Although -I believe the majority applies the wrong standard of review, this case warrants reversal even under a clear error standard. The majority’s basic legal analysis is uncontroversial — I do not disagree that engaging in a high speed chase lasting nearly twenty minutes on high seas in the middle of the night on a crowded boat that has few life preservers and attempting to ram a Coast Guard boat would warrant a reckless endangerment enhancement. My objection is that this set of facts has almost no applicability to Rodriguez-Lopez. According to both the record and the district court’s factual findings, the driver of the boat during virtually the entire chase was not Rodriguez-Lopez, but his co-defendant Garcia-Santos. Thus, the majority mis-frames its entire analysis by lumping the very distinct actions of Garcia-Santos with those of Rodriguez-Lopez.[1] The only question before us is whether Rodriguez-Lopez’s sentence should be substantially enhanced for “recklessly creating a substantial risk of death or serious bodily injury” because he took control of a driver-less speeding boat- for a matter of seconds [2] and'safely ending the chase by shutting the boat down.
First, I believe that because the pertinent facts can “clearly be set forth in detailed, non-conclusory findings by the district court,” de novo review is appropriate. See United States v. Williams, 340 F.3d 1231, 1241 (11th Cir.2003).[3] In this case, the district court clearly set forth detailed factual findings and then, after entertaining debate about the legal effect of the factual findings, finally determined that U.S.S.G. 2L1.1(b)(5) enhancement did apply, stating that “if I am wrong the Court of Appeals will let me know.” This Court therefore should review the factual findings of the district court for clear error, and review de novo the district court’s *1140 interpretation of the legal application of 2L1.1(b)(5) to those facts.
In my judgment, the district court’s factual findings, without more, do not constitute a sufficient basis for applying U.S.S.G. § 2L1.1(b)(5)’s enhancement to Rodriguez-Lopez. Rodriguez-Lopez’s co-defendant Garcia-Santos was responsible for the dangerous chase. In the words of the district court, Rodriguez-Lopez’s role was “much more minor.”[4] According to the district court, “the only” facts that could support an application of the enhancement to Rodriguez-Lopez are the facts that during a high speed chase, “he did take the helm, he did not stop the boat immediately; it was only after he was also pepper sprayed that he brought the boat to a standstill.” R4:155. The only eye-witness that testified explained that these events occurred almost simultaneously:
After [Garcia-Santos] was pepper sprayed, he just took his hands off the wheel and the throttles, and that is when the second operator [Rodriguez-Lopez] took control of the boat, and then [Garcia-Santos] moved to the stern of the boat ... And then again that operator [Rodriguez-Lopez] made a turn towards the Customs vessel and he in turn got pepper sprayed, and after he got sprayed he just brought the boat down and came what we call “dead in the water.”[5]
Furthermore, the district court specifically declined to make a finding that Rodriguez-Lopez had attempted to ram the Coast Guard vessel.
The de minimus evidence here simply does not support a finding by a preponderance of the evidence that Rodriguez-Lopez “recklessly ereat[ed] a substantial risk of death or serious bodily injury to another person.” Indeed, the facts make clear that in the brief moments he was at the helm, Rodriguez-Lopez safely brought the dangerous chase to an end.
Even if we view the evidence in the light most favorable to the government, the factual record does not provide enough clarity regarding Rodriguez-Lopez’s actions in those brief moments to warrant such a dramatic increase in his sentence. In this case, the bite from the sentencing enhancement has proven to be far more venomous than the base sentence. Rodriguez-Lopez’s crime, to which he plead guilty, was a misdemeanor attempt to reunite his family by traveling to Cuba with his co-defendant to bring his wife, daughter and some friends to the United States.[6] Given Rodriguez-Lopez’s cooperation with authorities, he would be eligible for probation in combination with home or community detention if it were not for the application of the sentencing enhancement now on appeal.[7] That enhancement requires *1141 Rodriguez-Lopez to serve at least an eighteen-month sentence. Because I do not believe the record supports the application of such a drastic enhancement, I respectfully dissent.

.Although the majority notices in its "Procedural History” section that Rodriguez-Lopez "took the helm of the go-fast boat only briefly,” Majority Opinion at 1136, this fact is totally ignored by the majority in its legal analysis. See Majority Opinion at 1137 ("The record demonstrates that the vessel sped through three-to-four foot seas at nighttime while the 22 aliens aboard the vessel were not wearing life jackets, and that the drivers attempted on several occasions to ram or shoulder pursuing vessels from the United States Coast Guard and Customs Service, refusing to stop until after both Rodriguez-Lopez and Garcia-Santos were exposed to pepper spray."); Id. at 1138 ("We find no material distinction between smugglers who transport aliens in motor vehicles without providing them with adequate safety measures, and the present case where the Rodriguez-Lopez and Garcia-Santos operated a boat in a hazardous manner while transporting aliens who were not wearing life jackets.”).

. The district concluded that Rodriguez-Lopez was at the helm for only "moments.” At oral argument, both counsel agreed that the "spirit of the testimony” was that Rodriguez-Lopez was at the helm for only "a matter of seconds or a minute.”

. It is well-established that "[i]n Sentencing Guidelines cases, we review the district court’s application of the Sentencing Guidelines de novo and its factual findings for clear error.” United States v. Hall, 312 F.3d 1250, 1261 (11th Cir.2002)(emphasis added)(internal citations and punctuation omitted). The majority fails to differentiate between'the district court’s factual findings of the events in question and the district court's separate determination that U.S.S.G. § 2L1.1(b)(5), applies, thus deviating from "our usual practice [of] examining] the district court's application of the law to the facts separately.” Williams, 340 F.3d at 1243. This is not a case where the "question of the applicability of a guideline ... practically answers itself.” Id. at 1242.

. The government has not argued below that the dangerous actions taken by Garcia-Santos should be imputed to Rodriguez-Lopez and the district court never attempted to do so. Nor does this record contain facts that indicate that such action would be appropriate.

. Testimony of Ernest Ramos, Petit Officer of United States Coast Guard, R4:21.

. Rodriguez-Lopez pled guilty to three misdemeanor alien smuggling counts in violation of 8 U.S.C. § 1324(a)(2)(A) and 18 U.S.C. § 371.

. The reckless endangerment enhancement resulted in a six-level increase in Rodriguez-Lopez’s offense level from 12 to 18, and, after a three-level adjustment for acceptance of responsibility, his offense level was 15. Because he has a Criminal History Category of I, the applicable sentencing guideline range was 18 to 24 months in prison. Without the enhancement for reckless endangerment his offense level would have been 9, with an applicable guideline range of 4-10 months imprisonment, or in lieu of imprisonment, a term of probation that includes a condition of home detention or community confinement. See U.S.S.G. § 5C1.1 (c)(3).