[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 4, 2002
THOMAS K. KAHN
CLERK

No. 01-15834
Non-Argument Calendar
_____

D.C. Docket No. 00-00056-CR-FTM-29

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS VERNON RICHARDSON, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(September 4, 2002)**

Before TJOFLAT, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

On September 6, 2000, appellant was indicted, in two counts, for

transporting child pornography in interstate commerce in violation of 18 U.S.C. §

2252A(a)(1), Count One, and for possessing materials that contained images of child pornography that had been transported in interstate commerce in violation of 18 U.S.C. § 2252A(a)(5)(B), Count Two. Appellant stood trial before a jury and was convicted on both counts. On October 1, 2001, the district court sentenced appellant to 180 months' imprisonment on Count One and, on Count Two, a consecutive 60 months' term of imprisonment. Appellant now appeals his convictions and sentences.

The indictment in this case stemmed from an investigation that began around midnight on June 17, 2000, when a DeSoto County, Florida, deputy sheriff spotted appellant standing behind a van that had been backed up to the bank of the Peace River. The deputy stopped to speak with appellant because, as she explained to him, several vehicular burglaries had recently occurred in the area, and his presence by the river bank late at night seemed suspicious. She asked him for identification, and he complied. She related the information (disclosed by the identification) to the police dispatcher, and the dispatcher informed her of an outstanding warrant for appellant's arrest for worthless checks. She then arrested appellant and impounded his van. An inventory search of the van uncovered a computer "zip drive" and several "floppy disks." A downloading of the zip drive

2

and the floppy disks revealed that they contained child pornography – in the form of images or pictures.

On August 8, 2000, appellant was arrested for possessing child pornography in violation of Florida law. The FBI, which had been alerted following the discovery of the child pornography, launched its own investigation, and it culminated in the instant indictment and appellant's convictions.

## I.

Appellant seeks for a new trial on the following grounds:

(1) the district court erred in denying his motion to suppress the images of child pornography yielded by the downloading of his zip drive and floppy disks because he did not consent to the downloading;

(2) the district court erred in admitting into evidence statements appellant made to an FBI agent – and subsequently to a DeSoto County Sheriff's Office detective – after informing the FBI agent that he wanted an attorney;

(3) Under Ashcroft v. Free Speech Coalition, 122 S.Ct. 1389 (2002), which held unconstitutional part of one of the definitions of child pornography, 18 U.S.C. §§ 2256(8)(B), and all of another definition, 2256(8)(D), the district court's jury

instructions were erroneous.[1]  We consider appellant's third point first, and then address the others.

A.

Count One alleged a violation of § 2252A(a)(1), which makes it a felony for any person knowingly to transport in interstate commerce "by any means, including by computer, any child pornography."  Count Two alleged a violation of § 2252A(a)(5)(B), which makes it a felony for any person who knowingly possesses any "computer disk . . . that contains an image of child pornography that has been . . . transported in interstate . . . commerce by any means, including by computer."

Appellant's <u>Free Speech Coalition</u> objection concerns the definition of "child pornography" contained in the district court's instructions to the jury.  In charging the jury, the court defined pornography in the words of the statute, 18 U.S.C. § 2256(8):

> '[C]hild pornography' means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated

---

[1]  The definition contained in § 2256(8)(D) is irrelevant, because the charges against appellant did not involve a "visual depiction" of child pornography that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaged in sexually explicit conduct. . . ."  18 U.S.C. § 2256(8)(D).  Rather, as we indicate in the text <u>infra</u>, appellant's challenge focuses on § 2256(8)(B).

4

image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where –

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or

(D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct. . . .

The part of § 2256(8)(B) struck down as unconstitutional in <u>Free Speech Coalition</u> consists of the words "or appears to be." 122 S. Ct. at 1405. Thus, had the district court omitted those words from its instruction, to obtain appellant's conviction on either count of the indictment the Government would have to prove that the children appearing in the images downloaded from appellant's zip drive and floppy disks were <u>actual</u> children, as opposed to "virtual" children – created, for example, through computer-imaging technology and not through the use of real children. On each count, however, the jury returned a general verdict, meaning that, in theory, under the court's charge, the jury could have convicted appellant by finding that the images or pictures depicted virtual children, rather than real children. Seizing on this possibility, that the jury's verdicts may have been based on the unconstitutional portion of the court's instruction, appellant submits that we have

5

no alternative but to vacate his convictions and remand the case for a new trial –

under a jury instruction that omits "or appears to be" from the definition of child

pornography.  The Government's response is that no reasonable jury could have

found that the images were of virtual children, because the evidence conclusively

established that the children were real children.

Appellant did not object to the jury instruction defining child pornography;

therefore, we review the objection for plain error.  See  United States v. Mitchell,

146 F.3d 1338, 1342 (11th Cir. 1998).

> To find reversible error under the plain error standard, we must
> conclude that (1) an error occurred, (2) the error was plain, and (3) the
> error affected substantial rights. . . .  Where all of these elements are
> demonstrated, we have discretion to order correction of the error and
> will do so 'in those circumstances in which a miscarriage of justice
> would otherwise result' . . . Additionally, we will reverse for plain
> error affecting substantial rights 'if the error . . . so seriously affect[s]
> the fairness, integrity or public reputation of judicial proceedings.'

Id. (internal citations omitted).

The Government properly concedes that the instruction at issue was erroneous,

because it included the words "or appears to be," and that the error was plain.  It

submits, however, that the error did not affect appellant's substantial rights.

Assuming that his substantial rights were affected, however, the Government

contends that affirming appellant's convictions would no result in "a miscarriage

of justice" or "seriously affect the fairness, integrity or public reputation of judicial

6

proceedings." We conclude that, notwithstanding the error, affirming appellant's convictions would neither work a miscarriage of justice nor seriously affect the fairness, integrity or public reputation of this judicial proceeding.

We reach this conclusion because the evidence clearly established that the children depicted in the images or pictures were actual children. Special Agent Sheehan of the Innocent Images Task Force, a federal task force investigating child exploitation on the Internet, testified that, based on his training and extensive experience as a member of the task force, the images depicted actual children, not what simply appeared to be children. We have examined the images shown to the jury. The children depicted in those images were real;[2] Of that we have no doubt whatsoever. Appellant's third point accordingly fails. We turn then to appellant's first two points, which address the district court's denial of the motions to suppress.

B.

---

[2] We note that appellant did not move for a judgment of acquittal at the close of the evidence on either count. At no point did he question that the images at issue showed children engaged in explicit sexual activity. The issue, here, is whether it can be said that the jury could not reasonably have found that the children were virtual children, as if created by computer imaging technology.

Appellant contends that the court erred in denying his motion to suppress the images taken from his zip drive and the floppy disks. The facts relating to this motion, as found by the magistrate judge and adopted by the district court, are these. As his van was in the process of being impounded, appellant signed a form consenting to a search of the vehicle. The search, conducted while the van was impounded, uncovered the zip drive and floppy disks. Detective Martha Faul, the officer assigned to appellant's case, then asked appellant if she and the officers assisting her could take the zip drive and the floppy disks from the van and view their contents. Appellant gave the officers the drive and disks, and Faul gave him a property receipt, which he signed. The drive and disks were subsequently downloaded and disclosed the child pornography that led to the instant indictment.

At the suppression hearing before a magistrate judge, appellant contended that he had been coerced into consenting to the search of the van and that the officers had no legal basis for downloading the zip drive and floppy disks. The magistrate judge found that the impounding and inventory of the van were legitimate, that his consent to the search was voluntary, and that he gave the zip drive and floppy disks to the officers because they wanted to see what was on them. We find no clear error in these fact findings, or in the legal conclusion that appellant voluntarily consented to the search of the van and the downloading of the

8

zip drive and floppy disks. We therefore reject appellant's first ground for a new trial.

C.

Appellant made several statements to the police and the FBI following his arrest. The facts relating to these statements, as found by the district court, are as follows. On August 9, 2000, the day after his arrest, FBI Agent Sheehan, having viewed the contents of the zip drive and floppy disks and concluded that they depicted child pornography, visited appellant in jail. After receiving a <u>Miranda</u> caution, appellant waived his right to remain silent, and agreed to speak to the agent without an attorney being present. Sheehan showed him a number of the pictures that had been downloaded from the zip drive and floppy disks. Appellant admitted that he had a computer, had downloaded the pictures from the Internet, and, using his computer, had distributed the pictures. He had been doing this for an extended period of time. He said that although there was a "fine line" between "child erotica" and child pornography, he saw nothing wrong with the pictures. When Sheehan told him that he had just admitted to the violation of federal criminal law, he asked for an attorney, whereupon Sheehan concluded the interview.

On August 15, Detective Faul received word that appellant wanted to speak to her. They met at the jail. She advised appellant of his <u>Miranda</u> rights, and acknowledged that he previously had asked for an attorney. He said that he wanted to speak to her without an attorney present. Faul showed him photos obtained from his zip drive and floppy disks. Responding, he said that he had downloaded the photos from the Internet onto disks and had transported the disks to Florida from Texas. Appellant asked to see Faul on two other occasions, on August 16 and 22. Each time, she advised him of his <u>Miranda</u> rights and made certain that he did not want counsel present.

The district court found no merit in appellant's claims that Agent Sheehan questioned him after he invoked his right to counsel, and that Detective Faul had questioned him in derogation of his right to counsel. We find no clear error in the court's finding that, on each occasion, appellant spoke to the law enforcement officer – first, Agent Sheehan and then Detective Faul – after having been informed of his rights, including the right to counsel, all of which he waived. We therefore affirm the denial of appellant's motion to suppress his statements.

II.

Appellant also asks that we vacate his sentences on the ground that the district court erred in enhancing his base offense level pursuant U.S.S.G. §

10

2G2.2(b)(4) because the evidence the court relied upon for the enhancement was unreliable.[3] The evidence appellant cites for this proposition came from Patricia Diaz, his former stepdaughter. She recounted numerous instances – from ages eight and fourteen – in which appellant sexually abused her. We have examined Diaz's testimony and find no fault in the court's decision to believe what she said. We therefore reject appellant's challenge to the court's application of § 2G2.2(b)(4).

Appellant's convictions and sentences are, accordingly,

AFFIRMED.

---

[3] U.S.S.G. § 2G2.2(b)(4) provides that "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, [ the court may] increase [the offense level] by 5 levels."