BRISCOE, Circuit Judge,
concurring and dissenting.
I concur in the majority’s resolution of the Brady/Trombetta issue and its affirmance of defendant Thomas Pearl’s convictions on Counts 6 and 7. I respectfully dissent, however, from the majority’s decision to vacate Pearl’s convictions on Counts 2 through 5 for transporting and possessing child pornography.
Prior to 1996, “Congress defined child pornography as ... images made using actual minors.” Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 1397, 152 L.Ed.2d 403 (2002). In 1996, Congress enacted the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2251 et seq., and “extended] the federal prohibition against child pornography to [include] sexually explicit images *1217 that appealed] to depict minors but were produced without using any real children.” Id. at 1396. More specifically, the CPPA added two prohibited categories of speech: (1) 18 U.S.C. § 2256(8)(B), which prohibited “any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture” that “[wa]s, or appear[ed] to be, of a minor engaging in sexually explicit conduct”; and (2) 18 U.S.C. § 2256(8)(D), which defined child pornography to include any sexually explicit image that was “advertised, promoted, presented, described, or distributed in such a manner that convey[ed] the impression” it depicted “a minor engaging in sexually explicit conduct.”
These additional categories of prohibited speech were in place at the time Pearl committed the acts in question and was charged in this case. Thus, Counts 2 through 5 of the indictment, which charged Pearl with transporting and possessing “child pornography” in violation of 18 U.S.C. §§ 2252A(a)(l) and (a)(5)(B),[1] implicitly incorporated these additional categories of prohibited speech. After he was indicted, Pearl moved to dismiss Counts 2 through 5 of the indictment on the grounds that the two categories of prohibited speech added by the CPPA, 18 U.S.C. §§ 2256(8)(B) and (D), were overbroad, vague, and unconstitutional. In support of his motion, Pearl asserted that “[n]o evidence ha[d] yet been adduced on the record as to whether the alleged images [we]re images of actual minors or whether the alleged images [we]re computer ‘morphed’ images, i.e., computer composite images that may contain body parts from various individuals which are combined or ‘morphed’ into an image that is not real.” ROA, Vol. I, Doc. 134 at 1-2. The district court denied Pearl’s motion.
At no time thereafter did Pearl question whether the images at issue showed actual children engaged in explicit sexual activity. Indeed, prior to trial, Pearl stipulated that “he knew the[ ] images [at issue] were child pornography and that minors appealed] in the images.” ROA, Vol. IV, Doc. 351 at 2; see also id., Doc. 350 (minute order noting that “the dft stipulated to the fact that the images contained child pornography and that there [we]re minors in the pictures”). Consistent with this stipulation, at trial Pearl admitted all of the essential elements of the child pornography-related counts and argued only that he had been entrapped by law enforcement officers and their agents. Pearl admitted under cross-examination that the computer diskettes seized from him at the Salt Lake Airport contained images of child pornography and that the images depicted minors engaged in sexually explicit conduct.[2] *1218 Likewise, Pearl admitted under cross-examination that he sent images of child pornography over the internet and that those images showed minors engaged in sexually explicit conduct.[3] Finally, Pearl did not move for judgment of acquittal on the grounds that the images at issue were “virtual” rather than actual minors.
Pearl now asserts, however, that in light of the Supreme Court’s decision in Free Speech Coalition, his child pornography-related convictions must be reversed and the case remanded to the district court with instructions that a judgment of acquittal be entered with respect to those counts. In support of his assertion, Pearl notes that the district court’s instructions to the jury defined the phrase “child pornography” to include not only visual depictions involving the use of “a minor engaging in sexually explicit conduct,” but also the unconstitutional language from § 2256(8)(B) encompassing visual depictions that “appeared] to be ... of a minor engaging in sexually explicit conduct.” ROA, Supp. Vol. I, Jury Inst. No. 21. Although Pearl admits that the Double Jeopardy Clause does not necessarily prohibit a retrial of the child pornography-related counts, he asserts that the evidence presented at trial was insufficient to support his convictions under the “actual minor” definition of “child pornography.”
The threshold question is what standard of review to apply to Pearl’s arguments. Although Pearl initially objected to the constitutionality of the “virtual” minor definition in his pretrial motion to dismiss the child pornography-related counts of the indictment, he made no further mention of the issue after the district court denied his motion. In particular, he failed to object, as required by Federal Rule of Criminal Procedure 30, to the district court’s jury instruction defining child pornography. Likewise, he failed to move for judgment of acquittal on the grounds that the images at issue were “virtual” rather than actual minors. I therefore conclude that the issues he now asserts are subject to review only for plain error. E.g., United States v. Lee, 54 F.3d 1534, 1540 (10th Cir.1995). Plain error exists when a clear or obvious error affecting substantial rights has seriously affected the fairness, integrity, or public reputation of the judicial proceeding. Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).
The majority concludes, mistakenly in my view, that Pearl’s motion to dismiss the indictment was sufficient to preserve his current objections to the district court’s jury instruction. In reaching this conclusion, the majority first suggests, citing United States v. Gama-Bastidas, 222 F.3d 779, 785 n. 4 (10th Cir.2000), that applica *1219 tion of the plain error standard is inappropriate “when the aggrieved party may object to the error at any time.” Gama-Bastidas, however, rests on the principle stated in Federal Rule of Criminal Procedure 12(b)(2) that the failure of an indictment to state an offense may be raised at any time by the defendant or the court itself. No such principle applies to objections to jury instructions. Rather, as outlined in Federal Rule of Criminal Procedure 30 (2002), “[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.” That leads to the majority’s second rationale, i.e., that Pearl’s motion to dismiss the indictment “plainly” preserved the issue. Maj. Op. at 1219. The only authority cited by the majority for this proposition, United States v. Hathaway, 318 F.3d 1001, 1010 (10th Cir.2003), is inapposite. Hathaway rests on the same principle as Gama-Bastidas — that a defendant may raise at any time the failure of an indictment to state an offense. It does not hold that a defendant’s challenge to an indictment relieves him of his obligation to comply with Rule 30.
After reviewing the record on appeal, I am convinced that the district court’s definitional instruction, though clearly erroneous, did not affect Pearl’s substantial rights or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. As noted, Pearl stipulated pri- or to trial that minors appeared in the images at issue, and admitted this fact at trial under cross-examination. A review of the images at issue verifies this fact— there is no doubt that each image contains one or more minors, most of whom appear to be prepubescent. Thus, there was no basis in the record for a reasonable jury to conclude that the images were produced using adults who appeared to be minors. Finally, a review of the images at issue clearly “show[s] that the children depicted in those images were real.” United States v. Hall, 312 F.3d 1250, 1260 (11th Cir.2002) (concluding similar instruction regarding definition of “child pornography” was plain error but did not require reversal in light of the nature of the images that defendant was charged with distributing). In other words, “no reasonable jury could,” after examining the images, “have found that the images were virtual children created by computer technology as opposed to actual children.” Id.; see also United States v. Richardson, 304 F.3d 1061, 1064 and n. 2 (11th Cir.2002) (concluding under similar circumstances that, because “[t]he children depicted in th[e] images were real,” the “jury could not reasonably have found that the children were virtual children, as if created by computer imaging technology”).[4] Thus, I conclude there was no risk that the jury convicted Pearl under the constitutionally erroneous portion of the district court’s definitional instruction (i.e., the “appears to be” portion of the instruction).
For these reasons, I would affirm all of Pearl’s convictions, including those for *1220 transmitting and possessing child pornography as charged in Counts 2 through 5.

. Section (a)(1) makes it a felony for any person knowingly to transport in interstate commerce "by any means, including by computer, any child pornography.” Section (a)(5)(B) .makes it a felony for any person knowingly to possess any "computer disk ... that contains an image of child pornography that has been ... transported in interstate ... commerce by any means, including by computer.”

. The following colloquy took place between the prosecutor and Pearl concerning images contained on Pearl's laptop computer:
Q. Mr. Pearl, when you came to Salt Lake City on May 21st, 1999, you brought your laptop computer with you, didn't you?
A. Yes, I did.
Q. And you also brought some computer diskettes; isn't that right?
A. Yes, it is.
Q. Mr. Pearl, I’m handing you what have been marked Plaintiff's Exhibits 44-A through 44-H, 45-A through 45-K, 46-A through 46-R, 47-A through 47-F, and 48-A through 48-L. If you’ll please take a look at these and tell the jury if these are the images that you brought to Salt Lake City *1218 on May 21st, 1999 on those computer diskettes?
A. I would imagine, if these are the ones that were found on the diskettes.
Q. You’re not denying those are the images, are you?
A. No, not at all.
Q. Do you agree those images depict minors engaged in sexually explicit conduct?
A. Yes.
ROA, Vol. XV at 38.

. The following colloquy took place between the prosecutor and Pearl concerning images sent by Pearl over the Internet:
Q. Mr. Pearl, do you agree that you sent child pornography to Mrs. Camielle Call-Tarbet over the Internet on May 4th, 1999?
A. Yes.
Q. Mr. Pearl, I'm handing you what have been marked as Plaintiff's Exhibits 8-A through 8-P. Could you please take a look at those and tell me if those are the images that you transmitted to her that day?
A. Yeah.
Q. And you agree, do you not, that those pictures are minors engaged in sexually explicit conduct?
A. Yes.
ROA, Vol. XV at 40.

. The majority states that in Hall and Richardson, “the government offered expert testimony at trial to prove that the images depicted actual minors.” Maj. Op. at 1219. What the majority overlooks, however, is that in both Hall and Richardson, the court conducted its own independent review of the images at issue and, in each case, concluded they were of actual children. See Hall, 312 F.3d at 1260 (“the pictures sent out to the jury are in the record before this court and they show actual children”); Richardson, 304 F.3d at 1064 (“We have examined the images shown to the jury. The children depicted in those images were real.”).