John Mark **PADGETT**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. CIV.A. 9:02–3287–08.

United States District Court,
D. South Carolina,
Beaufort Division.

Feb. 9, 2004.

---

**596**

Mary Gordon Baker, U.S. Attorneys Office, Charleston, SC, David Paul McCann, Charleston, SC, for defendant.

John Mark Padgett, Edgefield, SC, pro se.

### *ORDER*

BLATT, Senior District Judge.

### *INTRODUCTION*

This matter is before the Court upon the Petitioner's request for writ of habeas corpus, pursuant to 28 U.S.C. § 2255. The Petitioner pleaded guilty to one count of knowingly transporting or shipping child pornography in interstate commerce by computer, in violation of the Child Pornography Protection Act of 1996 [CPPA or Act], 18 U.S.C. § 2252, *et seq.* On October 23, 2000, he was sentenced to 108 months' imprisonment followed by a three-year term of supervised release. An appeal was taken, and the Fourth Circuit affirmed the conviction and sentence in November 2002. Thereafter, the Petitioner filed this action.

Because of the nature of the Petitioner's claims, the Court ordered the appointment of counsel. Briefs and motions were submitted by both the Petitioner and the Government, and a lengthy hearing was held on December 2 and 3, 2003. All issues have been fully explored, and the matter is now ripe for decision.

### *DISCUSSION*

The Petitioner makes three distinct claims in challenging his conviction and sentence: (1) the validity of his conviction under the CPPA in light of *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); (2) the ineffective assistance of appellate counsel; and (3) the ineffective assistance of trial counsel. Each will be discussed in turn.

### *Ashcroft v. Free Speech Coalition*

In 2002, the United States Supreme Court determined that a portion of the CPPA was an unconstitutional infringement on the First Amendment. In *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), the Court held that it was not proper to make illegal that which was legal but made to *appear* illegal. The statute in question, 18 U.S.C. § 2256(8), defines illegal "child pornography" as follows:

> "child pornography" means any visual description, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> (B) such visualization is, or appears to be, of a minor engaging in sexually explicit conduct;
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or
> (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

The Supreme Court ruled in *Free Speech Coalition* that Congress could not make illegal the production, transport or dissemination of images which *appeared to be, but were actually not,* minors engaging in sexual acts. 122 S.Ct. at 1405. The purpose of the statute, the Court found, was to protect minors from being sexually exploited. Where non-minors are portrayed as being minors, or the images of

minors are totally computer-generated without using an actual minor to produce it, the Court reasoned, there is no exploitation of a minor and thus no "child pornography." Moreover, because the statute sought to control speech beyond the standard for "obscene material," the Court held that the First Amendment was being infringed. *Id.* at 1401–05. The Court thus found that subsections (8)(B) and (8)(D), pertaining to material "appearing to be" child pornography, were unconstitutional.

■ Here, the Petitioner pleaded guilty to count two of a two-count indictment, which charged that he knowingly transported and shipped child pornography by computer, "as defined in Title 18, United States Code, Sections 2256(8)(A) and (8)(B)." The Petitioner contends that, because the indictment charged him under both sections, making no distinction between them, he was indicted under and pleaded to an unconstitutional statute and thus that his conviction should be vacated. In further support, the Petitioner alleges that because the indictment charged him with violations of sections (8)(A) *and* (8)(B), the Government had to prove that *both* sections were violated.

■ With regard to this last argument, the Petitioner is simply mistaken. It is well-established under the federal law of pleading that indictments must charge all consequential conduct in an indictment in the conjunctive ("defendant possessed with intent to distribute crack, cocaine *and* marijuana"), even though to convict a jury would have only to find any of the alleged acts in the disjunctive (possessed with intent to distribute crack, cocaine *or* marijuana). *United States v. Rhynes,* 196 F.3d 207, 242 (4th Cir.1999), *vacated in part on other grounds,* 218 F.3d 310 (4th Cir.2000) (en banc). "Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive. The district court, however, can in-

struct the jury in the disjunctive." *Id.* (citing *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Champion,* 387 F.2d 561 (4th Cir.1967)) (noting that the district court's jury instruction in the disjunctive did not constructively amend the indictment). Thus, even though the Petitioner was indicted for conduct under both subsections, there would only need to be proof that he violated one subsection.

■ The question, then, becomes whether there is clear proof that the Petitioner violated at least subsection (8)(A). The Fourth Circuit in *United States v. Ellyson,* 326 F.3d 522, 531 (4th Cir.2003), ordered a remand for re-trial based on an ambiguous jury instruction. It found that "the evidence in the record, coupled with the court's instructions, permitted the jury to convict Ellyson on both a constitutional and unconstitutional basis. Because there is no way for us to determine the jury's basis for its verdict, we must set the verdict aside." *Id.* The court also held, however, that there was sufficient evidence in the record to warrant a re-trial on the charge, as opposed to an outright acquittal. *Id.* at 533–35.

This is the course the Petitioner urges this Court to take: vacate the conviction and sentence and remand for re-trial. In *Ellyson,* however, there was undisputed testimony that only *some* of the images were of actual minors, and the detective in charge of the investigation could not determine if other images were of actual minors or were electronically-created images. *Id.* at 531. Because there was some doubt as to whether the jury convicted Ellyson for images which were minors (constitutional) or appeared to be minors (unconstitutional), the court was forced to vacate the conviction. *Id.*

Other courts since *Free Speech Coalition* (including unpublished decisions in

the Fourth Circuit) have ruled that the unconstitutional portion of the statute is severable from the remaining constitutional portions, and if the evidence is clear that the images in question involve actual minors, there is no "plain error," and thus no need to vacate the conviction or sentence. *United States v. Kelly,* 314 F.3d 908, 911 (7th Cir.2003) (statute is severable); *United States v. Richardson,* 304 F.3d 1061, 1063–64 & n. 2 (11th Cir.2002) (no challenge to the authenticity of the images or the age of the participants); *United States v. Hall,* 312 F.3d 1250, 1260 (11th Cir.2002) (same); *United States v. Davis,* 41 Fed. Appx. 566, 570 n. 3 (3d Cir.2002) (unpublished) (same) *Cf. United States v. Tanner,* 66 Fed.Appx. 449, 450 (4th Cir. May 15, 2003) (unpublished) (the parties stipulated at trial that the individuals depicted in the images were "minor children under the age of eighteen years of age").

Only one court appears to disagree. In *United States v. Pearl,* 324 F.3d 1210, 1213–14 (10th Cir.2003), the court rejected the plain error standard of review, noting that "our review of the images in this case on appeal, however much they might appear to be actual minors, should not serve as a substitute for the government's burden of proving at trial the depiction of actual minors." The Tenth Circuit further held that an acknowledgment at trial that the individuals in the images "depict[ed] minors" "does not require affirmation of his convictions because it is precisely the ambiguity of the word 'depict' that led to the Supreme Court's holding in *Free Speech Coalition." Id.*

Here, in contrast to *Ellyson,* there was never any evidence or discussion of the "appears to be" language; the only possible mention is from the indictment, which as noted earlier was required to be stated in the conjunctive. Because the Government did not have to prove the case in the conjunctive, *see Rhynes,* 196 F.3d at 242,

and because the statute is severable, *see United States v. Kelly,* 314 F.3d at 911, the Court believes that the Fourth Circuit would not vacate a conviction such as this if there is sufficient evidence to prove the Petitioner possessed actual child pornography. *E.g., Tanner,* 66 Fed.Appx. 449 (finding no plain error where there was a stipulation that the individuals depicted were minors).

The Government argues that the Petitioner waived his right to challenge the authenticity and the use of actual minors in the images when he pleaded guilty. The factual basis at the plea hearing included the following statements:

The Phoenix Police downloaded all of those photographs and had them examined by Dr. Ruth Farrey, who is an expert in the process called Tanner staging. Tanner staging is a method that a doctor can use to determine the age of a child in a photograph by examining the development of the pubic hair and the genitals. This expert determined that 14 of the 43 images were images with minors depicted in them.

Also in reviewing the rest of the photographs, it is obvious that many of the images meet the standard of child pornography, which is defined in Title 18 U.S.Code, Section [2256]; that is the pictures obviously are of prepubescent minors in many cases that are engaged in sexual acts with adults.

.　　.　　.　　.　　.

THE COURT: All right. Mr. Padgett, you heard what the United States Attorney has told me. Is that substantially true and correct?

MR. WYMAN: Your Honor, if I may interject for a moment?

THE COURT: Yes.

MR. WYMAN: Of course, the United States Attorney has detailed facts which

cover both indictments, including the one being dismissed as well as uncharged misconduct in this case.

So in asking my client whether it's substantially true, of course he may take exception to some of those facts as regards the -

THE COURT: Uncharged conduct?

MR. WYMAN: Exactly, Your Honor. So perhaps if we could focus -

THE COURT:Let me ask insofar as the counts in this indictment, and particularly as to Count Two, is what the United States Attorney told me substantially true and correct?

THE DEFENDANT: I would have to say it's substantially correct, Your Honor.

THE COURT: Is there any major thing that he told me—you're pleading guilty to Count Two, and Count One is in the indictment, if it's something that they charge that you sent 15 transmissions on the 27th of June and 41 on the 29th of June and a number of the 41, including some on the—some of the 15.

I think that's what you said, wasn't it, Mr. United States Attorney?

MR. HUBBELL: Yes, Your Honor.

THE COURT: Now, is that charge substantially true and correct?

THE DEFENDANT: Yes, Your Honor.

While this in itself may not indicate a complete waiver of the issue, it does establish that the Petitioner did not object that there were at least some actual minors depicted in the images he transmitted.

The Government also claims that the Petitioner never argued, claimed or objected that the images he was charged with transporting were virtual images or images of non-minors pretending to be minors, a fact which has been held to be determinative. *Richardson,* 304 F.3d at 1063–64 & n. 2 ("At no point did [defendant] question that the images at issue showed children engaged in explicit sexual activity."); *Hall,* 312 F.3d at 1260 ("no one ever claimed, or even hinted, that the images were of virtual children"); *Davis,* 41 Fed.Appx. at 570 n. 3 ("Nowhere in the trial record is there a statement of the court, of counsel, or of the witnesses suggesting that Davis could be convicted on the basis of sexually explicit depictions of people 18 years old or older who 'appear to be' younger ...."). The Court agrees. The Petitioner never argued that the persons depicted in the images at issue were not real children or that they were adults made to appear younger.

Indeed, at the sentencing hearing, the Defendant's counsel stipulated again that the vast majority of the images charged in Count Two were actual minors:

(MR. HUBBELL:) And my last exhibit, Your Honor, would be a copy of the photographs which were transferred by the Defendant to the Phoenix Detective.

MR. WYMAN: My understanding is that there are some 40 photographs in there. When he pled guilty, he pled guilty to a single count, or 38. I may be mistaken. And my understanding is that the 38 are amongst these 40. And if that be the case, I would like the Government to make that representation on the record.

I have no objection, I just don't want additional photos other than the ones that are part of the count which he pled guilty to.

.        .        .        .        .

MR. HUBBELL: He pled to Count Two, which would list 41 images, and those are the images.

.        .        .        .        .

MR. WYMAN: Just let me comment while it's on my mind, or I'll forget later.

My understanding is that in the analysis of this, not all of them were found to be pictures, or at least with certainty.

There are minors among them. There are minors that are established, I'm not quibbling with that. Those are the photos to which he pled guilty, but there was an analysis that was done and I believe that's before the Court.

THE COURT: Some of them fit the category?

MR. WYMAN: Yes, Your Honor, and most admittedly do.

MR. HUBBELL: I would ask you to take a look at those, because I believe they all fit the category and I know that every one is -

THE COURT: If some of them fit the category, that -

MR. HUBBELL: Right.

THE COURT: I don't care whether 33 fit it or 41 fit it. It doesn't make any difference.[1]

At the habeas corpus hearing, the Court also heard live testimony from Cynthia McCants, a special agent with the FBI who has 15 years' experience dealing with images of child pornography, and has been trained to estimate the age of a child based upon the development of the genital area. McCants testified that she confirmed via an FBI child exploitation database the identities and ages of some of the children depicted in the images the Petitioner sent to the Phoenix Police Department, thus confirming that the images were not virtual and depicted minor children. McCants further testified that she had seen the vast majority of the images sent by the Petitioner in other child pornography or sexual exploitation cases, and that, based on her experience in dealing with images of child pornography, all the images sent by the Petitioner were of real (not virtual), prepubescent children. The Court accepts this testimony, which was not persuasively challenged by the Petitioner.

Finally, as other courts have done, *see Richardson*, 304 F.3d at 1063–64; *Davis*, 41 Fed.Appx. at 570, the Government asserts that the Court's own review of the images would clearly establish that the images were both real and depicted actual minors. The Court has personally reviewed each of the photographs in evidence, and there is absolutely no doubt but that the persons depicted are real (not virtually created) and are obviously under the age of 18. Moreover, a review of the transcripts of internet chats reveals that the Petitioner had no dealings with or interest in virtual child pornography or pornography by adults posing as children.

Accordingly, based upon the analysis above, the Petitioner's conviction and sentence are valid. The Petitioner's arguments arising out of the *Free Speech Coalition* decision are rejected.

## Ineffective Assistance of Appellate Counsel

The Petitioner's contention that he was denied the effective assistance of counsel is governed by clearly established federal law—specifically by the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

First of all, the petitioner must demonstrate "that counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, he must show "that the deficient performance prejudiced the defense," i.e., that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

1. Of course, the Court's statement that the number of images depicting actual minors was irrelevant was made prior to the *Free Speech Coalition* decision.

*Carter v. Lee,* 283 F.3d 240, 248 (4th Cir. 2002) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052) (citations omitted).

Because the Court has found as a matter of law that the Petitioner is not entitled to relief under the *Free Speech Coalition* decision, the argument that his appellate counsel was ineffective for not raising the issue must be denied. *See Quesinberry v. Taylor,* 162 F.3d 273, 278–79 (4th Cir.1998) ("To establish prejudice a petitioner must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' If there is no prejudice, a court need not review the reasonableness of counsel's performance.") (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994) (noting that there can be no ineffective assistance of counsel in failing to raise an issue which is not legally viable); *United States v. Mikalajunas,* 186 F.3d 490, 493 (4th Cir.1999) (same).

█ Moreover, it appears that the *Free Speech Coalition* matter was presented to and rejected by the Fourth Circuit during the pendency of the direct appeal. The Petitioner's father testified that he sent the Fourth Circuit a legal memorandum prepared by his son regarding the *Free Speech Coalition* decision. The Fourth Circuit acknowledged the memorandum in its order affirming the conviction: "We note that Padgett has filed a motion for leave to file a pro se supplemental brief. Although we grant this motion, we find no merit to the claims raised therein." *United States v. Padgett,* 50 Fed.Appx. 125, 126 (4th Cir. Nov.8, 2002). Though the Court prefers to address the merits of the issue in deciding a petition for habeas corpus (and has done so), the issue was raised before Fourth Circuit, which at least gave cursory review to this very issue but was unpersuaded. Thus, even though the matter was not presented by counsel, the fact that the argument was considered further indicates that there was no prejudice as a result of this failure.[2]

*Ineffective Assistance of Trial Counsel*

Finally, the Petitioner alleges a number of ineffective assistance claims against his trial counsel, Michael Wyman. Wyman had represented the Petitioner in a prior state court criminal charge of lewd act upon a minor (his daughter). This charge was referred to the pre-trial intervention program, which the Petitioner successfully completed. Upon being notified of the federal investigation at issue, the Petitioner testified that he called Wyman to explain the charges, and that Wyman agreed

---

2. As a closely-related but tangential matter, although there were attempts prior to *Free Speech Coalition* to have the definition of "child pornography" overturned as unconstitutional, appellate counsel's failure to do so in the Petitioner's case is not constitutionally defective. To be effective, counsel is not required anticipate trends in the law, or argue in favor of overturning existing law. *Honeycutt v. Mahoney,* 698 F.2d 213, 217 (4th Cir. 1983) ("Certainly a criminal defense lawyer in state court is well advised to keep abreast of current trends in the law which may be favorable to his clients. However, we do not believe that failure to raise every issue which might have support from other jurisdictions constitutes ineffective assistance of counsel."); *cf. Tucker v. Ozmint,* 350 F.3d 433, 442 (4th Cir.2003) (*Strickland* "does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client"). In fact, the constitutionality of § 2256(8) had been upheld against a First Amendment attack in *United States v. Mento,* 231 F.3d 912 (4th Cir.2000), *vacated for reconsideration,* 535 U.S. 1014, 122 S.Ct. 1602, 152 L.Ed.2d 617 (2002), and thus any similar argument raised prior to *Free Speech Coalition* being decided would have been roundly rejected based on established precedent.

to take the case after some hesitation, resulting from his lack of federal criminal court experience.[3]

Wyman first appeared at the pre-trial conference in July 1999, where he stated that the Petitioner would most likely plead guilty but needed time to review discovery. Wyman continued to represent the Petitioner through the sentencing hearing, at which there were numerous objections to the number and extent of enhancements which could be added to the base guideline level. Sentencing took place over two days (October 17 and October 23, 2000), at which Wyman vigorously opposed the proposed enhancements and gave a plea for leniency.

The Petitioner's general complaints about Michael Wyman are that he was never admitted as a member of the Federal Bar, that he was later disbarred for misappropriation of his clients' escrow fund money, and that he had little to no experience with federal criminal issues or the Federal Sentencing Guidelines. The Petitioner specifically alleges that he never received any copies of motions or discovery from Wyman, that Wyman never discussed the discovery with him, that no psychological assessments were performed despite a previous evaluation suggesting that it might be relevant, that Wyman failed to object to several statements in the pre-sentencing reports, that Wyman failed to fully inform him of the full range of sentence he faced under the Sentencing Guidelines, and that Wyman may have been confused as to the version of the Sentencing Guidelines to be used in sentencing him. Each category of complaint will be addressed in turn.

- *Not Properly Admitted; Subsequent Disbarment*

■ The Petitioner asserts that Wyman never told him that he (Wyman) was not a properly-admitted member of the Federal Bar in this District, and that this in itself amounts to ineffective assistance of counsel. The Petitioner's father testified that he became suspicious of Wyman's membership throughout the preparation of the sentencing, and more so when Wyman sought to transfer the appeal of the case to another attorney. The record reflects that Michael G. Wyman was never admitted to the Bar of this Court.

This, however, is not an automatic grounds for vacating a conviction. An applicant for admission to the Bar of this Court must certify the following: (1) that he is a member in good standing of the Bar of the Supreme Court of South Carolina; (2) that he has completed of the "trial experiences" required to practice before South Carolina state courts, or some other equivalent experiences; and (3) that he has "studied" the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, the South Carolina Rules of Professional Responsibility and this Court's Local Civil and Criminal Rules. *See* Local Civil Rule 83.I.03 DSC. The application must be accompanied by $100.00 and the certification of two members of the Bar of this Court that, "to the best of their knowledge information, and belief, the applicant is of good moral character and professional reputation and meets the requirements for admission." *Id.*

At the time of his representation, Wyman was a member in good standing of the South Carolina Bar, and had successfully

---

**3.** The docket sheet indicates that Wyman was not originally retained by the Petitioner; it lists James F. Berl, who shared office space with Wyman, as the Petitioner's attorney. The Petitioner appeared without counsel at his arraignment and at his initial bond hearing.

completed the requisite "trial experiences." All he had not done, therefore, was pay $100.00, affirm that he had read the Federal and local rules, and have two Federal Bar members certify that he is of "good moral character."

Here, it is clear that the Petitioner was represented by someone with legal training, as opposed to a layperson totally unfamiliar with the law. With good reason, the standards are different when a layperson attempts to give legal advice. *See Solina v. United States,* 709 F.2d 160, 167 (2d Cir.1983) (finding that non-attorney representation is not subject to the "harmless error" analysis on appeal, despite overwhelming evidence of guilt, because the Sixth Amendment was intended to require counsel "learned in the law").

Cases addressing the issue of non-licensed *attorney* representation, on the other hand, have routinely found that there is no *per se* standard under the Sixth Amendment for technical flaws in licensure. *See United States v. Bradford,* 238 F.2d 395, 397 (2d Cir.1956) (attorney licensed in state court who failed to seek admission to federal court); *Wilson v. People,* 652 P.2d 595 (Colo.1982) (counsel who had graduated from law school, passed the bar exam, but had not yet taken the oath); *People v. Cornwall,* 3 Ill.App.3d 943, 277 N.E.2d 766 (1971) (out of state attorney who failed to seek admission *pro hac vice* ).

As the Third Circuit stated in *United States v. Costanzo,* 740 F.2d 251 (3d Cir. 1984),

> This is not a case involving representation by one without legal training or who was not a member of any bar.... As long as one is represented by an attorney who could have been admitted *pro hac vice* at the beginning of the trial, the failure to be formally admitted does not raise sixth amendment concerns.

*Id.* at 258 (citing cases); *see Solina,* 709 F.2d at 167 ("we do not intimate that any

technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment" (footnote omitted)).

■ The Petitioner was represented by someone with legal training and proper certification under South Carolina law. As noted, Wyman simply had not applied for admission to the Federal Bar in this District. This alone will not invalidate the assistance he rendered. *Compare United States v. Merritt,* 528 F.2d 650, 650 (7th Cir.1976) (noting that under "all the circumstances" counsel had not met a "minimum standard of professional representation" where he had failed the bar exam three times, never tried a case as an attorney and later took a non-legal job). Rather, the Court must analyze what assistance was given, and whether it meets the standard in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This issue will be addressed shortly.

■■ Nor is it *per se* ineffective assistance that Wyman was disbarred by the South Carolina Bar some 18 months after his representation of Petitioner. In general, the "technical versus substantive" standard utilized in licensure also applies in disbarment situations; that is, a disbarment for violation of technical bar requirements will not generally suffice, whereas being found to be incompetent by the state bar to represent clients qualifies as ineffective assistance. *E.g., United States v. Novak,* 903 F.2d 883, 889 (2d Cir.1990) (citing cases).

There is also a significant distinction between an attorney disbarred *at the time* of the representation and one disbarred *subsequent to* the representation. A variety of state and federal cases clearly hold that, unless it is somehow causally related to the representation at issue, disbarment *after* the representation is not automatical-

ly suspect. *E.g., United States ex rel. Ortiz v. Sielaff,* 542 F.2d 377, 380 (7th Cir.1976) (affirming holding that subsequent disbarment "for reasons having nothing to do with petitioner's case" is "irrelevant" to performance at trial); *Hernandez v. Wainwright,* 634 F.Supp. 241, 246 (S.D.Fla.1986) (subsequent disbarment not in itself sufficient absent showing of "direct nexus" with trial); *Collins v. State,* 74 Ohio App.3d 660, 600 N.E.2d 284, 285 (1991) (disbarment after trial did not render conviction "null and void"); *White v. State,* 267 Ga. 523, 481 S.E.2d 804, 806 (1997) ("objective standard of reasonableness" in *Strickland v. Washington* still applies after unrelated disbarment).

Here, Wyman was disbarred in April 2002 for personal use of client escrow funds. *In re Wyman,* 349 S.C. 307, 562 S.E.2d 658 (2002). This fraudulent act had absolutely nothing to do with representing the Petitioner in a guilty plea on federal child pornography charges. As such, the Court must view the representation in full to determine whether counsel rendered effective assistance. *See White,* 267 Ga. 523, 481 S.E.2d 804. *Compare United States v. Novak,* 903 F.2d 883, 890 (2d Cir.1990) (counsel was disbarred six years after representation; counsel had fraudulently represented facts in application to be admitted to bar without taking exam; court found "no distinction" between failure to seek authorization to practice due to legal ability and an "invalidly gained authorization stemming from a fraud that both prevented the state from assessing legal ability and revealed a want of moral character"). The Court's attention must then turn to the specific allegations made by the Petitioner.[4]

- *Lack of Federal Criminal Experience; Guideline Issues*

The majority of the Petitioner's complaints center around Wyman's professed lack of federal criminal law experience and his failure to accurately and appropriately inform him of and deal with the relevant Sentencing Guideline provisions. Under the standard announced in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052 (1984), ineffective assistance is rendered if "counsel's conduct so undermines the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The

**4.** The Court can only locate two Fourth Circuit opinions on this general subject. In *Roach v. Martin,* 757 F.2d 1463, 1472–73 (4th Cir.1985), the court rejected a petition for habeas corpus by a prisoner in state custody, who alleged ineffective assistance of counsel because, among other things, one of his trial counsel (Brooks) was under investigation by the state grievance committee at the time of his trial and was subsequently disbarred. In so doing, the court upheld the findings of both the District Court and the post-conviction relief court, which reviewed the transcripts of the disciplinary proceedings and concluded that "there is nothing in that record which shows, nor indicates, any dereliction of duty [by Brooks in his representation of Roach], nor is there any credible evidence that shows Mr. Brooks to have failed to adequately and effectively represent his clients" (alteration by the Fourth Circuit).

The second is *Soering v. Deeds,* 217 F.3d 840, 2000 WL 870490, at *5 (4th Cir. Jun.30, 2000), where the court summarily rejected the contention that lead trial counsel, "who has since been disbarred, was emotionally and mentally troubled at the time of the trial." The court found that the state court's rejection of this claim was not an unreasonable application of the *Strickland* standard, "not only because lead trial counsel did not perform below an objective standard of reasonableness", but also because Soering was not prejudiced, since local co-counsel was of sound mind and represented Soering competently.

While these affirmances do not directly address the issue at bar, they speak strongly in favor of those cases which require some direct "nexus" or other correlation between the subsequent disbarment and the representation at issue in order to find ineffective assistance of counsel *per se.*

Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 104 S.Ct. 2052.

■ "For ineffective assistance of counsel to constitute a fair and just reason to withdraw a guilty plea, it must be of constitutional magnitude." *United States v. Lambey,* 974 F.2d 1389, 1394 (4th Cir. 1992). "The defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that but for counsel's alleged substandard performance, there is a reasonable probability that [he] would not have pleaded guilty." *United States v. Craig,* 985 F.2d 175, 179 (4th Cir.1993) (citations omitted).

Further, where the issue revolves around knowledge of the potential consequences of pleading guilty, courts find that a proper Rule 11 plea colloquy generally cures any improper advice given prior to the plea. *E.g., Lambey,* 974 F.2d at 1394–95.

> If, however, at the Rule 11 hearing, the court specifically warns the defendant of possible results different from those he anticipated because of the prior event or advice, then the defendant bears a heavy burden when attempting to demonstrate that the prior event or advice should form the basis of a fair and just reason for a later withdrawal of his plea. If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice sys-

tem can rely, it must be recognized to raise a strong presumption that the plea is final and binding.

*Id.* at 1394.

■ Here, there is no specific argument that Wyman did or did not advise the Petitioner of certain facts, such as the proof against him, the elements of the offense or the statutory penalty, which could have affected his decision to plead guilty. Nor is there any assertion that the Court's plea colloquy was defective in any way. The Court advised the Petitioner of the statutory range of penalty, of the pre-sentence investigation process, and of the possibility that his Guideline sentence may be totally different than that which he and his attorney anticipated. The Petitioner indicated that he fully understood this and decided to proceed with his guilty plea. Merely receiving a larger sentence than that which you expected is not grounds to vacate a plea. *See Lambey,* 974 F.2d at 1394–95.[5]

■ The Petitioner makes much ado about the fact that there were three different pre-sentence reports with three different sentencing recommendations, each higher in penalty (offense levels of 18, 25, and 33). However, the Petitioner admitted at hearing that he was aware of several potential sentencing enhancements, including a two-point enhancement for use of a computer to traffic in child pornography, a two-point enhancement for trafficking in images depicting prepubescent children,

---

**5.** The Petitioner testified at hearing that Wyman told him from the beginning that he had little to no federal criminal law experience, but that his familiarity with federal military law was likely transferrable to federal civilian court. The Petitioner therefore received some notice that Wyman was not experienced in these matters, but chose to proceed with Wyman as his attorney anyway. Just as the Sixth Amendment guarantees the criminal defendant a right to counsel, it recognizes a limited right to allow the defendant to have counsel of his own choosing. *See United States v. Inman,* 483 F.2d 738, 739–40 (4th Cir.1973); *Miller v. Smith,* 115 F.3d 1136, 1149 & n. 5 (4th Cir.1997) (citing *Inman* ). With this foreknowledge, it would be indeed difficult to reward the Petitioner and let him avoid the consequences of his own poor decision, unless of course the chosen counsel was totally ineffective under *Strickland.*

and a five-point enhancement for a pattern of activity. The fact that Wyman mistakenly opined that the prior charge of lewd act on a minor would not count towards a "pattern of activity" does not mean that Wyman was ineffective. *Lambey*, 974 F.2d at 1394–95; *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir.1999). Wyman protested this enhancement, and a lengthy argument was made over the two-day sentencing hearing.

██ The Petitioner's most strenuously urged objection is to Wyman's alleged use of the wrong version of the Sentencing Guidelines in advising him, particularly with respect to the five-point enhancement for "distribution" of child pornography for "pecuniary gain," under USSG § 2G2.2(b)(2). As of 1998, when the crime was alleged to have occurred, § 2G2.2(b)(2) read as follows:

(2) If the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels.

The Application Note to this section read in part as follows:

*"Distribution" includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute.*

Effective November 1, 2000, shortly after the Petitioner's sentencing, the language and Notes were amended:

(2) (Apply the Greatest) If the offense involved:

(A) Distribution for pecuniary gain, increase by the number of levels from the table in § 2B1.1 ... corresponding to the retail value of the material, but by not less than 5 levels.

(B) Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by 5 levels....

.    .    .    .    .

*"Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.*

The Petitioner contends that the later, more punitive Sentencing Guidelines were used against him, in violation of USSG § 1B1.11, and that his attorney's failure to argue this fact constitutes ineffective assistance of counsel.[6] As the Court explained at the sentencing hearings and at the habeas hearing, however, the 2000 amendment was actually a codification of the evolving definition of "distribution" and "pecuniary gain." Cases decided well before 2000 interpreted the Guideline to mean something more than simply "for profit." *E.g., United States v. Probel*, 214 F.3d 1285, 1287–91 (11th Cir.2000); *United States v. Horn*, 187 F.3d 781, 791 (8th Cir.1999); *United States v. Lorge*, 166 F.3d 516, 518–19 (2d Cir.1999); *United States v. Garrett*, 190 F.3d 1220, 1222–23 (11th Cir.1999); *United States v. Hibbler*, 159 F.3d 233, 237–38 (6th Cir.1998); *Unit-*

---

**6.** From the Petitioner's argument, it is unclear whether he is arguing that *Wyman* used the wrong Guidelines manual in preparing the case and was ineffective for not recognizing this fact, or that the Court, Probation Office and Government used the wrong Guidelines manual and Wyman was ineffective for not properly objecting. Either way, as will be shown, the Court does not find any error.

*ed States v. Canada*, 110 F.3d 260, 263–64 (5th Cir.1997).

The Probation Office correctly noted that the definition had evolved, and the Government certainly had the right to raise this point at sentencing, especially considering there was no Fourth Circuit decision squarely on point at that time. In fact, a lengthy argument on this precise issue appears in the Government's "sentencing memorandum," in which the Government recognizes that the Guideline language mentioned only "pecuniary gain," but that several circuit courts had extended its meaning to bartering and other non-profit motive. On behalf of the Petitioner, Wyman argued strongly against the application of this definition, and cited a number of cases for the proposition that profit motive was required. *E.g., United States v. Black*, 116 F.3d 198, 202–03 (7th Cir. 1997); *United States v. Laney*, 189 F.3d 954, 958–61 (9th Cir.1999). However, the Court after much deliberation overruled the objection and applied the Guideline as interpreted by other courts.[7]

Thus, the Petitioner's claim that the wrong Guidelines manual was used in sentencing him is without merit. Moreover, because Wyman objected to this enhancement being included in the presentence report, and vigorously opposed its applica-

tion at the sentencing hearing, it cannot be said that he was ineffective for not raising the issue. The fact that Wyman may have been mistaken as to its applicability is not relevant to claims of ineffective assistance. *Lambey*, 974 F.2d at 1394–95; *Mikalajunas*, 186 F.3d at 493.

- *Other Issues*

■ At hearing, the Petitioner's new counsel suggested, but did not substantively argue, that the search of the Petitioner's home and computer may have been illegal, and that the statements he gave to law enforcement were tainted, and that Wyman's failure to request suppression of the evidence was ineffective assistance. The Court finds no merit in this argument. From the testimony of the arresting officer and a review of the Petitioner's testimony, the Petitioner's statements were voluntary, not coerced, and the search was in no way defective. The Petitioner's hearing counsel also suggested that Wyman's failure to raise the defense of entrapment constitutes ineffective assistance. This argument also fails. It is clear that the Phoenix Police Department obtained the images in question with but a request (without coaxing or coercion), and that sending images of child pornography over the internet was something that the Petitioner was predisposed to do in the first

---

7. The Assistant United States Attorney did note at sentencing that the Sentencing Guidelines were being amended in November 2000 to include the above-quoted language regarding non-profit motive. This was not, as the Petitioner claims, an improper citation to inapplicable law. Rather, as the AUSA explained, it "clarifies the meaning of this [older] Guideline.... So the [Sentencing] Commission is trying to make it absolutely clear that these Courts are correct, that any sort of trading counts."

Indeed, in a subsequent decision, the Fourth Circuit concluded similarly. In *United States v. Williams*, 253 F.3d 789, 792–94 & nn. 3, 4 (4th Cir.2001), the crime occurred prior to the 2000 Guideline amendments.

The court cited the circuit split in authority, sided with the more expansive interpretation of distribution, and noted that Congress had "recently reaffirmed" its interest in protecting sexual exploitation from child pornography "through its actions regarding the very guideline at issue here." Calling the amendment to § 2G2.2(b) a "clarification," the court noted that "the need for clarifying language does not necessarily work a change in the guideline's original meaning." *Id.* at n. 4. The Fourth Circuit concluded that the legislative history behind the amendment was lacking in "clear evidence" to verify the reason for the amendment, but opined that the amendment was merely clarifying, not substantive. *Id.*

place. *E.g., United States v. Sligh*, 142 F.3d 761, 762 (4th Cir.1998) (defense of entrapment requires government "inducement," which in turn requires a showing of "governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party") (citations omitted). Entrapment, therefore, could not have been validly raised.

The Petitioner's claim of ineffective assistance based on Wyman's failure to conduct mental evaluations is equally unavailing. The Petitioner has presented nothing to indicate that he is or was suffering from a mental condition which could possibly negate or reduce his legal culpability for these crimes.

As to the Petitioner's additional claims of ineffective assistance of counsel, the Court concludes that the Petitioner has simply failed to meet the standard outlined in *Strickland v. Washington*; that is, even if the alleged assistance fell below an objective standard of reasonableness, he has not demonstrated that "the result of the proceeding would have been different." *Quesinberry v. Taylor*, 162 F.3d 273, 278–79 (4th Cir.1998) (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052 (1984)). There is no evidence that the Petitioner would not have pleaded guilty if Wyman explained the discovery materials to him in detail, or if Wyman had come to see him in jail more often. There is no indication that, if the Petitioner had advance knowledge that the Government and Probation Office were seeking the two five-level enhancements, he would have been permitted to withdraw his guilty plea before sentencing.

The Petitioner was facing a maximum prison term of 15 years on each count of the indictment. The Petitioner at no time denied distributing images of child pornography via computer to another person. From a review of the record, the factual evidence against the Petitioner was overwhelming; the only questions to be resolved had to do with the sentence to be imposed. As noted previously, Wyman more than adequately defended the Petitioner client in objecting to the five-point enhancements (among other disagreements with the final pre-sentencing report), successfully argued for a three-point reduction for acceptance of responsibility (which is not normally applied where there is an obstruction of justice enhancement), and obtained the minimum sentence under the adjusted Guideline range. The Petitioner claims in an affidavit that, had he known of the right to withdraw his guilty plea, he would have sought to do so when told of the third presentence report and its offense level of 33. However, as the *Lambey* decision and others make clear, erroneous advice regarding the Guideline range of sentence is rarely a justification to withdraw a guilty plea. *E.g. Lambey*, 974 F.2d at 1394–95. Here, the Petitioner has not shown that he falls within the very limited circumstances where this could be allowed.

Finally, there was some suggestion that Wyman neglected to seek the Petitioner's cooperation with the Government in order to become eligible for a downward departure. The Petitioner gave the investigating officers certain information regarding web sites which dealt in child pornography. The Petitioner has presented no evidence that the information he possessed was of actual benefit to the Government, that the Government ever expressed an interest in having the Petitioner's cooperation, or that Wyman's failure to seek a cooperation agreement prejudiced him in any other way. *E.g., United States v. Berger*, 188 F.Supp.2d 307, 332 (S.D.N.Y. 2002); *Saccoccia v. United States*, 42 Fed. Appx. 476, 482 (1st Cir.2002); *Feliz v. United States*, 2002 WL 1964347, at *5 (S.D.N.Y. Aug.22, 2002).

## CONCLUSION

Based on the foregoing, it is

ORDERED that the Government's motion for summary judgment is granted; the petition for writ of habeas corpus is denied; and this action is ended.

**IT IS SO ORDERED.**